UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| **Giselle Fritz f/k/a Giselle Carter** | § | |
| **Evan Davis** | § | **Case No.:** <u>**1:11-cv-03300-FB-VVP**</u> |
| **Jason Spiegel-Grote** | § | |
| **Patricia Casertano** | § | |
| **On behalf of themselves and all others** | § | |
| **similarly situated** | § | |
| **Plaintiffs** | § | |
| **v.** | § | |
| **Resurgent Capital Services, LP** | § | |
| **LVNV Funding, LLC** | § | |
| **Alegis Group, LLC** | § | |
| **Mel S. Harris And Associates, LLC** | § | |
| **David Waldman** | § | |
| **Resurgent Capital Services, LLC** | | |
| **Defendants** | | |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS**

## TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES ................................................................................................ iii

I.      INTRODUCTION ............................................................................................... 1

II.     STANDARD OF REVIEW ................................................................................. 2

III.    ALL DEFENDANTS VIOLATED THE FDCPA ............................................... 2

    A.  Public policy of the FDCPA .......................................................................... 2

    B.  Defendants are jointly and severally liable ................................................... 3

    C.  Defendants failed to properly identify the putative creditor .......................... 6

        a)   The failure to disclose LVNV as the creditor in the validation notice is a per se violation of 1692g(a)(2)................................................................6

        b)   The listing of three possible current creditors in the validation notice was materially confusing to the least sophisticated consumer........................9

    D.  By suing without standing to do so, defendants threatened and took action that could not legally be taken and sought to collect charges not permitted by law ..............11

        a)   Resurgent had no standing to bring suit, a fact Defendants affirmatively misrepresented to consumers and to the court.....................................11

        b)   These acts materially violate the FDCPA........................................14

    E.  Defendants violated the FDCPA by litigating without a debt collection license, and by affirmatively misrepresenting that they had a license...................................22

    F.   The Resurgent Defendants violated the FDCPA by inflating the amount it reported to the credit reporting agencies consumers owed LVNV..................................26

    G.  No meaningful review by Harris Defendants, argued in the alternative................30

IV.     DEFENDANTS VIOLATED GBL§ 349 ................................................................ 31

    A.  Defendants' acts or practices were consumer oriented..................................31

    B.  Defendants' conduct was materially misleading .......................................... 33

    C.  Defendants' action caused harm ..................................................................34

V.      PROCEDURAL ISSUES ............................................................................35

   A. None of the Plaintiffs' claims are barred by collateral estoppel.................................35

      a)     As to the named plaintiffs, no issues have been resolved in prior actions
             because there have been no final judgments..........................................35

      b)     Class members' claims do not involve relitigation of any issues decided in
             prior litigation..................................................................................36

   B. The Noerr-Pennington doctrine is inapplicable to Plaintiffs' claims.........................39

   C. The Court should not abstain from this case...............................................................41

VI.     PRAYER...............................................................................................43

ii

# Table of Authorities

**Cases**

Acosta v. James A. Gustino, P.A.,
    2012 WL 2017337 (11th Cir. June 6, 2012) ..................................................... 43

Advanced Magnetics, Inc. v. Bayfront Partners, Inc.,
    106 F.3d 11 (2d Cir.1997) ............................................................................ 12

Agan v. Katzman & Korr, PA,
    2004 WL 555257 (S.D. Fla. Mar. 16, 2004) ................................................. 42

Akalwadi v. Risk Mgmt Alternatives, Inc.,
    336 F. Supp.2d 492 (D. Md. 2004) .............................................................. 29

Amerson v. Chase Home Fin., LLC,
    2012 WL 1686168 (D. Colo. May 7, 2012) ................................................. 41

Ashcroft v. Iqbal,
    556 U.S. 662 (2009) ................................................................................

Balk v. Fererstein & Smith, LLP,
    2011 WL 1560984 (W.D.N.Y. Feb. 18, 2011) ............................................. 38

Balsly v. West Michigan Debt Collections, Inc.,
    2012 WL 628490 (E.D. Va. Feb. 27, 2012) ............................................. 42,43

Basile v. Blatt, Hasenmiller, Liebsker & Moore, LLC,
    632 F. Supp.2d 842 (N.D. Ill. 2009) ........................................................... 39

Bell Atlantic Corp. v. Twombly,
    550 U.S. 544 (2007) ................................................................................

Bentley v. Great Lakes Collection Bureau,
   6 F.3d 60 (2d Cir. 1993) ........................................................................ 2,16

B & F Bldg. Corp. Liebig,
   76 N.Y.2d 689 (1990) .................................................................................. 26

Ben Krupinski Builder & Assocs., Inc. v. Baum,
   36 A.D.3d 843 (App. Div. 2d Dep't. 2007) .................................................. 26

Bernstein v. Howe,
   2003 WL 1702254 (S.D. Ind. March 31, 2003) ........................................... 30

Bilello v. JPMorgan Chase Ret. Plan,
   592 F. Supp.2d 654 (S.D.N.Y. 2009) ........................................................... 35

Bourff v. Rubin Lublin, LLC,
   674 F.3d 1238 (11th Cir. 2012) ............................................................... 11,16

Braatz v. Leading Edge Recovery Solutions, LLC,
   2011 U.S. Dis. LEXIS 123118 (N.D. Ill. Oct. 21, 2011) ............................ 9,10

Bradshaw v. Hilco Receivables, LLC,
   765 F. Supp.2d 719 (D. Md. 2011) ........................................................... 23,24

In re Bressler,
   387 B.R. 446 (Bankr. S.D.N.Y. 2008) .......................................................... 37

Broughman v. Chiari & Ilecki, LLP,
   2012 WL 5880945 (W.D.N.Y. Nov. 21, 2012) ........................................... 21,22

Burdick v. Palisades Collection, LLC,
   2008 WL 80943 (C.D. Cal. Jan. 3, 2008) ..................................................... 28

Calabrese v. CSC Holdings, Inc.,
   2004 WL 3186787 (E.D.N.Y. July 19, 2004) ............................................... 40

California Motor Transp. Co. v. Trucking Unlimited,
    404 U.S. 508 (1972) ........................................................................... 40

Carvel Farms Corp. v. Bartomeo,
    272 N.Y.S.2d 507 (N.Y. Sup. Ct. Westchester County 1965) ........................................ 12

Catala v. Resurgent Capital Services L.P.,
    2010 WL 2524158 (S.D. Cal. June 22, 2010) ................................................. 5

Centurion Capital Corp. v. Druce,
    14 Misc. 3d 564  (N.Y. Civ. Ct. N.Y. County 2006) ................................................. 25,34

Clomon v. Jackson,
    988 F.2d 1314 (2d Cir. 1993) ................................................................ 18,19

Coble v. Cohen & Slamowitz, LLP,
    824 F. Supp.2d 568 (S.D.N.Y. 2011) .......................................................... 17

Colorado River Water Conservation Dist. v. U.S.,
    424 U.S. 800 (1976) ........................................................................... 41

Cousins v. Duane St. Assocs.,
    7 Fed. App'x 85 (2d Cir. 2001)................................................................. 38

D'Arata v. New York Cent. Mut. Fire. Ins. Co.,
    76 N.Y.2d 659 (1990) ......................................................................... 37

Davis v. Trans Union, LLC,
    526 F. sup.2d 577 (W.D.N.C. 2007) .......................................................... 29

Day v. Union Mines, Inc.,
    862 F.2d 652 (7th Cir. 1988) ................................................................ 43

Derisme v. Hunt Leibert Jacobson P.C.,
    2012 WL 3000386, (D.Conn. July 23, 2012) ............................................................ 16


Diaz v. Portfolio Recovery Assocs., LLC,
    2012 WL 661456 (E.D.N.Y. Feb. 28, 2012) ....................................................... 16,19,33


DirectTV, Inc. v. Rowland,
    2005 WL 189722 (W.D.N.Y. Jan. 22, 2005) ............................................................ 41


Dittmer v. County of Suffolk,
    146 F.3d 113 (2d Cir. 1998) ................................................................................. 42


Ditty v. CheckRite, Ltd,
    973 F. Supp. 1320 (D. Utah 1997) ....................................................................... 30


In re Douds,
    327 B.R. 122 (Bankr. W.D.N.Y. 2005) ................................................................ 35


Dudek v. Thomas & Thomas Attys & Counselors at Law,
    702 F. Supp.2d 826 (N.D. Ohio 2010) ..................................................................


Duffy v. Landberg,
    215 F.3d 871 (8th Cir. 2000) ............................................................................... 30


Eads v. Wolpoff Abramson, LLP,
    538 F. Supp.2d 981 (W.D. Tex. 2008) ................................................................. 27


Ellis v. Soloman and Soloman, PC,
    591 F.3d 130 (2d Cir. 2010) ............................................................................... 23


Ekinici v. GNOC Corp.,
    2002 WL 31956011 (Dec. 31, 2002) ................................................................... 38


Evans v. Ottimo,
    469 F.3d 278 (2d Cir. 2006) ............................................................................... 37

Exxon Mobil Corp. v. Arabia, Inc.,
    544 U.S. 280 (2005) ................................................................... 41

Fin. California, Inc., v. Lawyers Title Ins. Corp.,
    2010 WL 4876014 (D. Conn. Nov. 22, 2010) ........................... 20

Finnegan v. Univ. of Rochester Med. Ctr.,
    21 F. Supp.2d 223 (W.D.N.Y. 1998) ......................................... 29

Fiorenzano v. LVNV Funding, LLC,
    2012 WL 2562415 (D.R.I. June 29, 2012) ................................. 24

First Interstate Bank of Fort Collins, N.A. v. Soucie,
    924 P.2d 1200, 1202 (Colo.App. 1996) ....................................... 4

Fontell v. Hassett,
    2012 WL 2479543 (D. Md. June 28, 2012) ................................. 4

Foster v. D.B.S. Collection Agency,
    463 F. Supp.2d 783 (S.D. Ohio 2006) ....................................... 27

Fox v. Citicorp Credit Servs.,
    15 F.3d 1507, 1516 (9th Cir. Ariz. 1994) ................................... 4

Gabriele v. Am. Home Mortg. Servicing, Inc.,
    2012 WL 5908601 (2d Cir. Nov. 27, 2012) ..................... 14,15,16,35

Gaidon v. Guardian Life Ins. Co. of Am.,
    94 N.Y.2d 330 (1999) .......................................................................

Garcia v. Resurgent Capital Services, L.P.,
    2012 1144239 (N.D. Cal. Apr. 4, 2012) ....................................... 6

Gearing v. Check Brokerage Corp.,
    233 F.3d 469 (7th Cir. 2000) ....................................................... 17

Gerber v. Citigroup, Inc.,
    2009 WL 248094 (E.D. Cal. Jan. 29, 2009) ................................. 40

Gervais v. Riddle & Assocs., PC,
    479 F. Supp.2d 270 (D. Conn. 2007) .......................................... 18

Goins v. JBC & Assocs., PC,
    352 F. Supp.2d 262 (D. Conn. 2005) ....................................... 23,24

Goldman v. Cohen,
    445 F.3d 152 (2d Cir. 2006) .........................................................

Grant-Hall v. Cavalry Portfolio Servs., LLC,
    856 F. Supp.2d 929 (N.D. Ill. 2012) ........................................... 17

Grdn v. Leiken, Ingber & Winters, PC,
    643 F.3d 169 (6th Cir. 2011) ...................................................... 17

Harrington v. CACV of Colorado, LLC,
    508 F. Supp. 128 (D. Mass. 2007) .............................................. 17

Harris v. Jacob Marsh, LLC
    2012 WL 3655357 (W.D.N.Y. July 6, 2012) ............................... 38

Hartman v. Great Seneca Fin. Corp.,
    569 F.3d 606 (6th Cir. 2009) ...................................................... 39

Hasbrouck v. Arrow Fins. Servs., LLC,
    2011 WL 1899250 (N.D.N.Y. May 19, 2011) ............................. 18

Heintz v. Jenkins,
    514 U.S. 291 (1995) ..................................................................... 39

Hepsen v. J.C. Christensen and Assoc., Inc.,
    2009 WL 3064865 (M.D. Fla. Sept. 22, 2009) ............................................................. 7

Interpharm, Inc. v. Wells Fargo Bank, N.A.,
    655 F.3d 136 (2d Cir. 2011) .................................................................................... 2

Ison v. Javitch, Block & Rathbone,
    2007 WL 2769674 (S.D. Ohio Sept. 18, 2007) ........................................................ 40

Jackson v. Midland Funding, LLC,
    468 Fed. Appx. 123 (3d Cir. 2012) ......................................................................... 19

Jacobson v. Healthcare Fin. Servs.,
    516 F.3d 85 (2d Cir. 2008) ............................................................................... 2,23

Jenkins v. Gen. Collection Co.,
    538 F. Supp.2d 1165 (D. Neb. 2008) ...................................................................... 19

Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA,
    130 S. Ct. 1605, 1622 (2010) ................................................................................ 4

Johnson v. Rowley,
    569 F.3d 40 (2d Cir. 2009) .................................................................................... 2

Karlin v. IVF Am., Inc.,
    93 N.Y.2d 282 (1999) ......................................................................................... 32

Karony v. Dollar Loan Ctr., LLC,
    2010 WL 5186065 (D. Nev. Dec. 10, 2010) ............................................................ 29

Kaufman v. Eli Lilly & Co.,
    65 N.Y.2d 449 (1985) ......................................................................................... 37

Kimber v. Fed. Fin. Corp.,
    668 F. Supp. 1480 (M.D. Ala. 1987) .......................................................... 5,18

Kinel v. Sherman Acquisition II LP,
    2007 WL 2049566 (S.D.N.Y. July 13, 2007) ............................................... 28

Klein v. Soloman & Soloman, P.C.,
    2011 WL 5354250 (D. Conn. Oct. 28, 2011) ........................................... 14,19

Kuhn v. Account Control Tech, Inc.,
    865 F. Supp. 1443 (D. Nev. 1994) ............................................................... 24

Lane v. Fein, Such and Crane, LLP,
    767 F. Supp.2d 382 (E.D.N.Y. 2011) .......................................................... 21

LeBlanc v. Unifund CCR Partners,
    601 F.3d 1185 (11th Cir. 2010) .................................................................. 3,23

Lesher v. Law Offices of Mitchell N. Kay, PC,
    650 F.3d 993 (3d Cir. 2011) ........................................................................

Loftis v. Credit Acceptance Corp.,
    2011 WL 976621 (E.D. Ark. March 18, 2011) ............................................ 19

LVNV Funding, LLC v. Trice,
    952 N.E.2d 1232 (IL App. Ct 2011) ............................................................ 26

Magrin v. Unifund CCR Partners, Inc.,
    52 Fed. Appx. 938 (9th Cir. 2002) .............................................................. 28

Maguire v. Citicorp Retail Servs., Inc.,
    147 F.3d 232 (2d Cir. 1998) ........................................................................

Mangum v. Action Collection Servs., Inc.,

575 F.3d 935 (9th Cir. 2009) ........................................................... 8

Marchant v. U.S. Collections West, Inc.,
    12 F. Supp.2d 1001 (D. Ariz. 1998) ............................... 24

Martinez v. Albuquerque Collection Servs.,
    867 F. Supp. 1495 (D.N.M. 1994) ................................. 4

Martsolf v. JBC Legal Group, P.C.,
    2008 WL 275719 (M.D. Pa. Jan. 30, 2008) ................... 5

Mascoll v. Strumpf,
    2006 WL 2795175 (E.D.N.Y. Sept. 26, 2006) .............. 41

Massey v. On-Site Manager, Inc.,
    2012 WL 3641367 (E.D.N.Y. Aug. 23, 2012) .............. 8

Matter of McGrath v. Gold,
    36 N.Y.2d 406 (1975) .................................................. 35

McAffee v. Law Firm of Forster & Garbus,
    2008 WL 3876079 (E.D.N.Y. Aug. 18, 2008) .............. 21

McCollough v. Johnson, Rodenburg & Lauinger, LLC,
    637 F.3d 939 (9th Cir. 2011) ................................. 17,19

McKnight v. Benitez,
    176 F. Supp.2d 1301 (M.D. Fla. 2001) ....................... 35

Midland Funding LLC v. Brent,
    644 F. Supp.2d 961 (N.D. Ohio 2009) ......................... 18

Midland Funding LLC v. Tagliafferro,
    33 Misc.3d 937  (Sup. Ct. Richmond County 2011) ...... 34

Miller v. Account Mgmt. Servs.,
        2008 WL 2338300 (N.D. Ind. June 3, 2008) ................................................................. 6

Miller v. McCalla, Raymer, Padrick, Cobb, Nichols & Clark, LLC,
        214 F.3d 872 (7th Cir. 2000) ........................................................................... 3

Miller v. Upton, Cohen & Slamowitz,
        687 F. Supp.2d 86 (E.D.N.Y. 2009) ......................................................... 30,31

Nero v. Law Office of Same Streeter, PLLC,
        655 F. Supp.2d 200 (E.D.N.Y. 2009) ........................................................... 23

Newman v. CheckRite California, Inc.,
        912 F. Supp. 1354 (E.D. Cal. 1995) ............................................................. 30

Oei v. N. Star Capital Acquisitions, LLC,
        486 F. Supp. 2d 1089, 1096 (C.D. Cal. 2006) ............................................... 4

Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.,
        85 N.Y.2d 20 (1995) ................................................................................. 32,33

Patzka v. Viterbo College,
        917 F. Supp. 654 (W.D. Wis. 1996) ............................................................. 30

Perez v. Telecheck Servs., Inc.,
        208 F. Supp.2d 1153 (D. Nev. 2002) ........................................................... 28

Peter v. GC Services, L.P.,
        310 F.3d 344 (5th Cir. 2002) .......................................................................... 3

Phifer v. Home Savers Cons. Corp.,
        2007 WL 295605 (E.D.N.Y. Jan. 30, 2007) ................................................

Pipiles v. Credit Bureau of Lockport, Inc.,

886 F.2d 22 (2d Cir. 1989) ...................................................................................

Poirier v. Alco Collections, Inc.,
 107 F.3d 347 (5th Cir. 1997) ......................................................................24

Pollice v. Nat'l Tax Funding, L.P.,
 225 F.3d 379 (3d Cir. 2000) .........................................................................4

Purnell v. Arrow Fin. Servs., LLC,
 303 F. Appx. 297 (6th Cir. 2008) ...............................................................29

Resurgent Capital Servs., LLC v. Mackey,
 32 Misc. 3d 265 (N.Y. Dist. Ct. Nassau County 2011) ...........................13,14

Richstone v. Chubb Colonial Life Insurance,
 1999 WL 287332 (May 7, 1999, S.D.N.Y.) ...............................................12

Riordan v. Nationwide Mut. Fire Ins. Co.,
 977 F.2d 47 (2d Cir. 1992) .................................................................................

Rivera v. Bank One,
 145 F.R.D. 614 (D.P.R. 1993) ....................................................................29

Rodriguez v. It's Just Lunch, Intl.,
 2010 WL 685009 (S.D.N.Y. Feb. 23, 2010) .................................................

Ruggles v. Wellpoint, Inc.,
 253 F.R.D. 61 (N.D.N.Y. 2008) .................................................................14

Russell v. Equifax A.R.S.,
 74 F.3d 30 (2d Cir. 1996) .............................................................................9

Schuh v. Druckman & Sinel, LLP,
 602 F. Supp.2d 454 (S.D.N.Y. 2009) .........................................................38

Securitron Magnalock Corp. v. Schnabolk,
    65 F.3d 256 (2d Cir. 1995) ........................................................................ 32

Segal v. Brachfeld,
    2012 WL 3792756 (N.D. Cal. Aug. 31, 2012) ......................................... 6

Shelton v. Wilson,
    2006 WL 1737221 (9th Cir. June 23, 2006) ........................................... 35

Shula v. Lawent,
    359 F.3d 489 (7th Cir. 2004) ............................................................... 27,39

Sial v. Unifund CCR Partners,
    2008 WL 4079281 (S.D. Cal. Aug. 28, 2008) ......................................... 40

Simmons v. Roundup Funding, LLC,
    622 F.3d 93 (2d Cir. 2010) ....................................................................... 16

Simpson v. Alter,
    78 A.D.3d 813,  (App. Div. 2d Dep't. 2010) ...................................... 35,36

Smith v. LVNV Funding, LLC,
    2012 WL 3890255 (E.D. Tenn. Sept. 7, 2012) ....................................... 24

Smyth v. Merchants Credit Corp.,
    2012 WL 2343031 (W.D.Wash.. June 19, 2012) ..................................... 21

Somin v. Total Cmty. Mgmt. Corp.,
    494 F.Supp.2d 153 (E.D.N.Y. 2007) ........................................................ 8

Spagnola v. Chubb Corp.,
    574 F.3d 64 (2d Cir. 2009) ....................................................................... 31

Spencer v. Standard Metals & Chems. Corp.,

237 N.Y. 479 (1924) .................................................................................................. 12


Sprinkle v. SB&C LTD,
    472 F. Supp.2d 1235 (W.D. Wash. 2006) ....................................................... 24


Stiff v. Wilshire Credit Corp.,
    2006 WL 141610 (D. Ariz. Jan. 17, 2006) ..................................................... 28


Stutman v. Chem. Bank,
    95 N.Y.2d 24 (2000) ....................................................................................... 34


Suffolk Fed. Credit Union v. Cumis Ins. Soc., Inc.,
    829 F. Supp. 2d 82, 86 (E.D.N.Y. 2010) ....................................................... 43


Sullivan v. Equifax,
    2002 WL 799856 (E.D. Pa. April 19, 2002) ................................................... 29


Super Star Sneakers & Sports, Inc. v. Bata Shoe Co., Inc.,
    508 F. Supp. 260 (E.D.N.Y. 1981) ................................................................ 37


Suquilanda v. Cohen & Slamowitz, LLP
    2011 WL 4344044 (S.D.N.Y. Sept. 8, 2011) ........................................... 11,19


Sykes v. Mel Harris & Assoc., LLC,
    757 F. Supp. 2d 413 (S.D.N.Y. 2010) ............................... 8,15,16,32,33,39,40


Titus v. Wallick,
    306 U.S. 282 (1939) ....................................................................................... 12


Uche v. North Star Capital Acquisition, LLC,
    2011 WL 978240 (D. Neb. March 17, 2011) ................................................. 19


United States v. Bank of New York & Trust Co.,
    296 U.S. 463 (1936) ....................................................................................... 42

Venes v. Professional Service Bureau, Inc.,
 353 N.W.2d 671 (Minn. App. 1984) ........................................................ 35

Vill. Of Westfield v. Welch's,
 170 F.3d 116 (2d Cir. 1999) ................................................................. 42

Wadlington v. Credit Acceptance Corp.,
 76 F.3d 103 (6th Cir. 1996) ................................................................. 5

Wallace v. Washington Mut. Bank, F.A.,
 638 F.3d 323 (6th Cir. 2012) ............................................................. 11,15

Walls v. United Collection Bureau, Inc.,
 2012 WL 1755751 (N.D. Ill. May 16, 2012) ............................................ 10

Warren v. Sessoms & Rogers,
 676 F.3d 365 (4th Cir. 2012) .............................................................. 7,8

In re Wilson,
 311 B.R. 566 (D. Or. 2004) ................................................................ 35

Winemiller v. Worldwide Asset Purchasing, LLC,
 2011 WL 1457749 (D. MD. April 15, 2011) ........................................... 17

Whitaker v. Ameritech Corp.,
 129 F.3d 52 (7th Cir. 1997) ................................................................ 37

Woodford v. Cmty Action Agency of Greene County, Inc.,
 239 F.3d 517 (2d Cir. 2001) ............................................................... 41

**Statutes**

15 U.S.C. § 1692, <u>et seq.</u> ...........................................................................*passim*

N.Y. Admin § 20-493 ........................................................................................ 23

N.Y. Admin § 20-494 ........................................................................................ 23

N.Y. Gen. Bus. Law § 349, et seq. ............................................................ passim

N.Y. CAC § 20-490 ..................................................................................... 22,25

N.Y. CPLR § 321(a) ........................................................................................ ....

N.Y. CPLR §1004 .......................................................................................... 12

N.Y. CPLR § 1018 .......................................................................................... 13

N.Y. CPLR § 3015(e) ..................................................................................... 25

N.Y. CPLR § 8101 .......................................................................................... 27

N.Y. CPLR § 8301 .......................................................................................... ....

N.Y. Partnership Law §121-403 ................................................................... 3

N.Y. Partnership Law § 26 ............................................................................ 3

N.Y. Partnership Law § 24 ............................................................................ 3

2A N.Y. Jur. 2d Agency § 296 ...................................................................... 5

2A N.Y. Jur. 2d Agency § 181 ...................................................................... 6

82 N.Y. Jur. 2d Parties § 19 ...................................................................................... 13

**Rules**

Fed. R. Civ. P. 12(b)(6) ............................................................................................. 2

**Other**

S. Rep. No. 382, 95th Con., 1st Sess. 5 .................................................................... 2

# I.   <u>INTRODUCTION</u>

1.     Plaintiffs, Giselle Fritz f/k/a Giselle Carter, Evan Davis, Jason Spiegel-Grote, and Patricia Casertano on behalf of themselves and all others similarly situated, bring suit against Defendants for their violations of the Fair Debt Collection Practices Act, 15 U.S.C. 1692, et seq., (the "FDCPA"), and N.Y. Gen. Bus. Law § 349 *et seq.* for systematically filing and prosecuting thousands of collection lawsuits without having a license or standing to do so, for making deceptive and misleading representations in dunning letters and other written communications with alleged debtors, and for making misrepresentations in submissions to Credit Reporting Agencies. Second Amended Complaint ("SAC"), DE 28, p. 1.

2.     This lawsuit primarily involves Defendants' false representations that debt owned by LVNV is in fact owned by Resurgent Capital Services, LLC.  These misrepresentations include the filing, maintaining, and prosecuting of hundreds of illegal collection lawsuits in the name of Resurgent Capital Services, LLC; and the sending of thousands of written communications falsely stating that Resurgent Capital Services, LLC was the purchaser, assignee and/or owner of consumer debts. These communications include initial written communications that failed to identify LVNV as the creditor to whom the alleged debt was owed. Resurgent and LVNV also communicated credit information to Credit Reporting Agencies which they knew or should have known to be false. SAC ¶ 12.

3.     By filing illegal debt collection litigation under the name of Resurgent Capital Services, LLC, all Defendants inflicted damage on thousands of unsuspecting consumers in New York State. Without limitation, this damage to the class and subclass includes taking money from consumers under threat of litigation and judgment when the debt collector did not have the legal right to institute suit on its behalf. The damage also includes the time spent and costs incurred by

consumers to defend against meritless collection lawsuits that should never have been filed and should never have been prosecuted. SAC ¶ 13.

## II.       STANDARD OF REVIEW

4.       Courts apply the same standard of review for a motion for judgment on the pleadings, FRCP 12(c), as they do for a motion to dismiss for failure to state a claim, FRCP 12(b)(6) Johnson v. Rowley, 569 F.3d 40, 43 (2d Cir.2009) (per curiam). For a Fed. R. Civ. P. 12(b)(6) motion, the Court "assum[es] all facts alleged within the four corners of the complaint to be true, and drawing all reasonable inferences in plaintiffs favor." Interpharm, Inc. v. Wells Fargo Bank, N.A., 655 F.3d 136, 141 (2d Cir. 2011).

## III. ALL DEFENDANTS VIOLATED THE FDCPA
### A.    Public Policy of the FDCPA

5.       The purpose of the FDCPA is "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). Congress designed the FDCPA to be enforced primarily through private parties – such as plaintiffs – acting as "private attorneys general." See S. Rep. No. 382, 95th Con., 1st Sess. 5, ("The committee views this legislation as primarily self-enforcing; consumers who have been subject to debt collection abuses will be enforcing compliance.") and Jacobson v. Healthcare Fin. Servs., 516 F.3d 85, 91 (2d Cir. 2008) ("In this way, the FDCPA enlists the efforts of sophisticated consumers like [plaintiff] as 'private attorneys general' to aid their less sophisticated counterparts, who are unlikely themselves to bring suit under the Act, but who are assumed by the Act to benefit from the deterrent effect of civil  actions brought by others."). The FDCPA is a strict liability statute. Bentley v. Great Lakes Collection Bureau, 6 F.3d 60 (2d Cir. 1993) (''The FDCPA is a strict liability statute . . . and the

2

degree of a defendant's culpability may only be considered in computing damages…").

## B.   DEFENDANTS ARE JOINTLY AND SEVERALLY LIABLE

6.      Defendants do not dispute joint and several liability except as to LVNV and Alegis. MTD pp. 21, 22. The relationship of the Defendants outlined in SAC ¶¶ 15 – 24.[1]

7.      The liability for Alegis is clear. Alegis is the general partner of Resurgent LP. SAC ¶ 7. Under NY state law, a general partner in a limited partnership has the same liabilities as a general partner in a partnership.[2] State general partnership law makes a general partner liable for the FDCPA violations of the partnership, *regardless* of whether the general partner is a debt collector.[3] State law may expand the scope of FDCPA protections, but is preempted if it attempts to narrow the scope of FDCPA protections. § 1692n. (In any case, Alegis is alleged to be a debt collector. SAC § 137.)

8.      Alegis is also "responsible for the management" of Resurgent, LP, SAC ¶ 137, whose joint liability Defendants have not disputed. MTD p. 21, 22.  Resurgent LP "acts as the master servicer for charged off consumer debt owned by LVNV, servicing, administering, and collecting LVNV's charged-off receivables." SAC ¶ 16. Therefore Alegis is directly taking the activities that Plaintiffs allege violate the FDCPA.

9.      LVNV is directly liable for violations and liable under state agency principles.  First,

---

1 For brevity, this memorandum will use the term the Resurgent Defendants to mean Resurgent Capital Services, LP, ("Resurgent LP"), Resurgent Capital Services, LLC ("Resurgent LLC"), LVNV Funding, LLC, and Alegis Group, LLC; and the term the Harris Defendants to mean Mel S. Harris and Associates, LLC and David Waldman.
2 N.Y. Partnership Law § 121-403 (McKinney). In a partnership, all partners are jointly and severally liable for everything chargeable to the partnership, Id. § 26(a)(1), including "any wrongful act or omission of any partner acting in the ordinary course of the business of the partnership." Id. § 24.
3 LeBlanc v. Unifund CCR Partners, 601 F.3d 1185, 1202 (11th Cir. 2010) ("While ZB and CCR may not be debt collectors under the FDCPA, that fact is immaterial because they are general partners of Unifund.34 Thus, ZB or CCR are liable "to the same extent" as Unifund regardless of whether or not ZB or CCR are debt collectors, and whether or not the ZB or CCR entities violated the FDCPA."); Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C., 214 F.3d 872, 876 (7th Cir. 2000) (Under state partnership law, a partner of a debt collection partnership is jointly and severally liable for the FDCPA violations of the partnership, even if that partner is not a debt collector); and Peter v. GC Services, LP, 310 F.3d 344, 353 (5th Cir.2002) (same).

contrary to Defendants' assertions, Plaintiffs have alleged actions by LVNV that violate the FDCPA and GBL § 349.  For example, Plaintiffs allege that LVNV filed suit against Plaintiff Casertano in its own name, without directing its attorneys to dismiss the prior case filed to collect the same debt.  SAC ¶ 84.  Similarly, each time that LVNV directs its attorneys to attempt to substitute or amend it as a plaintiff in a debt collection lawsuit, it is actively participating in the attempt to collect a debt through unfair or deceptive means.  A recent Supreme Court decision and out of circuit decisions suggest that in the context of debt collection litigation – where the debt collector is violating the FDCPA as a *party* in a collection action through its law firm – the history and structure of the FDCPA leads to the liability of the principal, rather than strict state agency principles.[4]

10.     LVNV is also liable for the conduct of its agents.  Courts have repeatedly held debt collectors utilizing attorneys or other agents to carry out debt collection practices that violate the FDCPA are vicariously liable for their agent's conduct.[5]

---

4 <u>Fox v. Citicorp Credit Servs</u>., 15 F.3d 1507, 1516 (9th Cir. Ariz. 1994) ("In order to give reasonable effect to section 1692i [of the FDCPA], we must conclude that Congress intended the actions of an attorney to be imputed to the client on whose behalf they are taken."); <u>Oei v. N. Star Capital Acquisitions, LLC</u>, 486 F. Supp. 2d 1089, 1096 (C.D. Cal. 2006) ("even if Lynn had held, as a matter of California law, that a client may not be held vicariously liable for his or her attorney's actions, this holding would be inapposite, as the scope of vicarious liability under the FDCPA is a question of federal rather than state law.") <u>citing</u> to <u>Fox</u> at 1516.  <u>Fontell v. Hassett</u>, 2012 WL 2479543 (D. Md. June 28, 2012) ("A debt collector should not be able to hire an attorney to engage in illegal debt collection practices on its behalf as a means of avoiding liability under the FDCPA.").

The U.S. Supreme Court recently cited, with approval, two decisions holding the debt collector principal vicariously liable for the debt collection violations of its debt collector agent, and did so without any discussion of the need for control or a right to control. "Moreover, a lawyer's interest in avoiding FDCPA liability may not always be adverse to her client. Some courts have held clients vicariously liable for their lawyers' violations of the FDCPA." <u>Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA</u>, 130 S. Ct. 1605, 1622 (2010) <u>citing</u> <u>Fox</u>  at 1516; <u>and</u> <u>First Interstate Bank of Fort Collins, N.A. v. Soucie</u>, 924 P.2d 1200, 1202 (Colo.App. 1996)."). <u>See</u> <u>Fox</u>, 15 F.3d at 1516 (holding that "Congress intended the actions of an attorney to be imputed to the client on whose behalf they are taken"); <u>First Interstate Bank</u>, 924 P.2d at 1202 ("Thus, vicarious liability under the FDCPA will be imposed for an attorney's violations of the FDCPA if both the attorney and the client are debt collectors as defined in § 1692a(6).").

5 <u>See</u> <u>Martinez v. Albuquerque Collection Servs</u>., 867 F. Supp. 1495, 1502 (D.N.M. 1994) and cases collected therein. <u>Pollice v. Nat'l Tax Funding, L.P.</u>, 225 F.3d 379, 404-05 (3d Cir. 2000) ("Although these cases involved the attorney-client situation, we believe they may be applied here. Thus, we conclude that NTF—which itself meets the definition of "debt collector"—may be held vicariously liable for CARC's collection activity. We believe this is a

4

11.     Plaintiffs allege that LVNV has created this structure to minimize its exposure to liability. SAC ¶ 18.  In its motion to dismiss, LVNV is again attempting to use Resurgent as a liability shield. MTD p. 21, 22. Resurgent has little net worth. One percent of Resurgent's net worth is just $25,000. Catala v. Resurgent Capital Services L.P., 2010 WL 2524158 at * 1 (S.D. Cal. June 22, 2010). In contrast, LVNV purchases "hundreds of thousands of charged off consumer accounts." SAC ¶ 18. The face value of those accounts is enormous.

12.     This Court need not decide these issues because the SAC alleges facts that made a plausible claim that LVNV is liable under NY agency principles.[6] A handful of individuals "own, manage, direct, [and] operate" LVNV, other the Resurgent Defendants, and related entities "which are all interrelated in a complex business structure focusing primarily on the collection of consumer debt."[7] SAC ¶¶ 15 – 24, p. 6. fn. 1 and references cited therein; Sherman Financial Group, the corporate owner and operator of these interlocking entities reported in 2006 total assets of $1.204 billion and a net income of $347 million. Id. LVNV is engaged in a "joint venture" with the other Resurgent defendants. SAC ¶ 27. LVNV uses Resurgent as its agent and master servicer to collect the accounts owned by LVNV. SAC ¶ 22. LVNV uses Resurgent to

---

fair result because an entity that is itself a "debt collector"—and hence subject to the FDCPA—should bear the burden of monitoring the activities of those it enlists to collect debts on its behalf.") Cf. Wadlington v. Credit Acceptance Corp., 76 F.3d 103, 108 (6th Cir. 1996) ("We do not think it would accord with the intent of Congress, as manifested in the terms of the Act, for a company *that is not a debt collector* to be held vicariously liable for a collection suit filing that violates the Act only because the filing attorney is a 'debt collector.'") (emphasis added). See also Kimber v. Fed. Fin. Corp., 668 F. Supp. 1480, 1486 (M.D. Ala. 1987) ("To interpret [the FDCPA] otherwise would severely undermine the Act and frustrate the intent of Congress, for a debt collector would simply evade the Act by hiring an attorney to do what it could not do itself... [The] omissions and commissions of an attorney at law are to be regarded as acts of the client whom he represents.") (interpreting prior version of FDCPA that included an exemption for attorneys).

6 2A N.Y. Jur. 2d Agency § 296 (principal liable for act of agent for which the principal had the mere *right* to control).

7 See  Martsolf v. JBC Legal Group, P.C., 2008 WL 275719 at * 10, 11  (M.D. Pa. 2008) ("Boyajian, as the president of both companies and the owner of JBC, designed and administered this process. The court finds that the ORM and JBC undisputedly maintain an attorney-client and agent-principal relationship for the purpose of collecting debts. Hence, ORM is vicariously liable for FDCPA infractions that JBC commits while acting on its behalf.")

report to the credit reporting agencies debts allegedly owed to LVNV. SAC ¶ 19. LVNV lends its

debt collection license number to the collection lawsuits filed by Resurgent. SAC ¶ 27.

13.     If nothing else, LVNV ratified the acts of the Resurgent Defendants and its debt

collection law firms. 2A N.Y. Jur. 2d Agency § 181. Since at least 2006, LVNV has been using

various law firms to file hundreds of collection suit in the name of Resurgent. SAC ¶ 33 Despite

the fact that a court ruled in 2006 the LVNV cannot have Resurgent file suits in its own name to

collect debts owned by LVNV, LVNV continued to do so through the date of this filing of this

complaint five years later. FAC ¶34. Similarly, as described below, LVNV has previously been

sued for sending initial written communications failing to identify itself as the creditor, but still

continues to do so.

14.     Lastly, Courts have repeatedly held LVNV liable or allowed claims against LVNV to go

forward for the debt collection violations of LVNV's agents.[8]

**C.    Defendants Failed to Properly Identify the Putative Creditor**

**a)  The failure to disclose LVNV as the creditor in the validation notice is a per se
violation of 1692g(a)(2)**

15.     Viewing Defendants' violations in chronological order, the very first was the failure to

provide "the name of the creditor to whom the debt is owed" in the validation notice, as required

by 15 U.S.C. § 1692g(a)(2).  As alleged in the SAC, "Harris and Resurgent LLC claimed [in an

affidavit of merit filed in state court] that the collection letters included in Exhibit F were mailed

to Fritz [a/k/a Carter]. The initial communication, dated 5/27/2010, does not identify LVNV as

---

8 Garcia v. Resurgent Capital Services, LP, 2012 WL 1144239 at * 7 (N.D. Cal. Apr. 4, 2012) (LVNV held liable
for the FDCPA violations its law firm committed in sending collection letters and making collection phone calls);
Miller v. Account Mgmt. Services, 2008 WL 2338300 at * 4, (N.D. Ind. 2008) (Granting consumer's motion to
amend complaint to allege, "LVNV and Resurgent are vicariously liable for any violations of the FDCPA and
FCRA by entities that attempted to collect on the debt owned by LVNV…. Defendants have not shown that these
added counts fail to state a claim, thus they have not demonstrated futility."); and Segal v. Brachfeld, 2012 WL
3792756 (N.D. Cal. Aug. 31, 2012) (Motion to amend complaint to hold LVNV and Resurgent liable for the abusive
debt collection telephone calls made by LVNV's law firm "would not be futile.").

6

the current creditor, and indeed, does not refer to LVNV in any way." SAC ¶ 65. Defendants therefore violated the FDCPA in "failing to provide the proper disclosures to the consumer pursuant to 1692g(a)." SAC ¶ 140.

16.     The FDCPA defines "creditor" this way: "The term 'creditor' means any person who offers or extends credit creating a debt or to whom a debt is owed, but such term *does not include any person to the extent that he receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another*." 15 U.S.C. § 1692a(4). Resurgent thus is not a creditor. Based on this exclusion, a court in another case involving LVNV and Resurgent held that a dunning letter that identified Resurgent as the creditor when the debt was in fact owed to LVNV was a false representation that violated §1692e(10). Hepsen v. J.C. Christensen and Associates, Inc., 2009 WL 3064865 (M.D.Fla. Sept. 22, 2009) (noting that a creditor is "any person who offers or extends credit creating a debt or to whom a debt is owed," but that such term does not include debt collectors like Resurgent). The exclusion likewise means that the current creditor was not accurately disclosed.

17.     Pretermitting temporarily the issue of whether FDCPA claims involving a misrepresentation or a deceptive or false statement generally must be material to be actionable, the pertinent point here is that disclosure violations are not subject to this requirement because the absence of a disclosure is not a misrepresentation and because by making them mandatory, Congress has legislatively determined that these disclosures are in fact material. Thus, for example, in Warren v. Sessoms & Rogers, 676 F.3d 365, 373–75 (4th Cir. 2012), the court held that the materiality requirement is not applicable to a § 1692e(11) claim that the defendant failed to disclose that it was a debt collector because the conduct contemplated in that subsection involves a failure to disclose rather than a false means used to collect a debt. "[W]hether a

materiality requirement attaches to other violations of § 1692e has no impact on [plaintiff]'s allegations that the defendants violated § 1692e(11)." 676 F.3d at 374. Like § 1692e(11), 1692g mandates certain disclosures, one of which is "the name of the creditor to whom the debt is owed" in the initial communication with the debtor. LVNV is not mentioned in the initial contact letters here. See also Massey v. On-Site Manager, Inc., 2012 WL 3641367 (E.D.N.Y. Aug. 23, 2012) ("But FDCPA § 1692e also contains other provisions that do not require a showing of materiality. For example, FDCPA § 1692e(11) mandates that debt collectors disclose in the initial communication with a consumer that they are attempting to collect a debt. The failure to give the required disclosure is actionable *per se,* without any requirement of materiality.") citing to Warren at 374.

18.     Defendants do not argue to the contrary. Rather, defendants contend that plaintiffs' dunning letter claims are barred by the statute of limitations. This contention is wrong. Under the discovery rule or the doctrine of equitable tolling, the statute of limitations period on an FDCPA violation does not lapse until one year after a consumer discovers or could reasonably have discovered the violation. See Mangum v. Action Collection Serv., Inc., 575 F.3d 935, 941 (9th Cir. 2009) (discovery rule applies to FDCPA claims); Sykes v. Mel Harris & Associates, LLC, 757 F. Supp. 2d 413, 422 (S.D.N.Y. 2010) (FDCPA claims are subject to equitable tolling); Somin v. Total Cmty. Mgmt. Corp., 494 F. Supp. 2d 153, 160 (E.D.N.Y. 2007) (implicitly recognizing application of discovery rule and equitable tolling to FDCPA claims).

19.     By their very nature, the collection letters sent by Defendants concealed the FDCPA violations; the letter Defendants sent to Fritz did not include any reference to LVNV, even though LVNV was the current creditor. SAC § 65. Fritz had no way to discover the fact that the creditor was not identified in the letter until at least March 9, 2011, when Defendants sought to

amend the caption in the debt collection case against Fritz.  SAC § 56.  The statute of limitations for other class members similarly would not lapse until a year after Defendants took some action that revealed the true ownership of the debt, the earliest date on which FDCPA violations in dunning letters could have been discovered by those borrowers.  The motions to amend that Plaintiffs' Counsel have so far identified were filed in or after November, 2010, well within the year prior to the filing of this complaint.

> **b)   The listing of three possible current creditors in the validation notice was materially confusing to the least sophisticated consumer.**

20.     Not only is LVNV, the actual current creditor, not specified in the validation notice, but the letter is materially confusing as to who is claiming a right to payment on the alleged debt.  It states that the Harris firm is the "attorneys for the above," and that "Our client advises that you are indebted to it."   However, the entities listed "above" in this letter are Resurgent Capital Services, LLC and HSBC Bank Nevada National Association/Levitz Furni"(sic) (Doc. 28-3, p. 22).  Which one is Harris' client? or are two or all three his clients, even though "client" is in the singular?  It is impossible to tell, and so impossible for the consumer to know to whom the debt is allegedly owed. [9]  In all likelihood, since the only name that would mean anything to the least sophisticated consumer is Levitz Furni[ture], that is the one she will incorrectly assume is owed the debt.

21.     This situation is even more egregious than one found actionable in another case involving LVNV.  In <u>Braatz v. Leading Edge Recovery Solutions</u>, LLC et al, 2011 U.S. Dist. LEXIS 123118 (N.D. Ill. Oct. 21, 2011), the notice explained that LVNV is the creditor, but in the text of the letter, the debt collector created confusion.  The letter:

---

9  It is not enough that the disclosures required by § 1692g are conveyed; those disclosures must be conveyed "clearly" and "effectively." <u>Russell v. Equifax A.R.S.,</u> 74 F.3d 30, 35 (2d Cir. 1996)

informed Braatz that her 'delinquent CITIBANK account has been placed with our company for collections.' Thus, the text of the letter identified a second creditor.… This is an apparent contradiction that the debt collector fails to explain. An unsophisticated consumer might understand that LVNV had purchased the delinquent Citibank account. That is, however, but one plausible inference to be drawn from the letter. An unsophisticated consumer might just as reasonably conclude that [what] she believed to be a single debt was now owed to two separate companies (LVNV and Citibank). Such confusion might cause an unsophisticated consumer to be concerned about the possibility she was being defrauded or that she might pay the incorrect creditor and continue to have outstanding debt.

The same is true here.

22.   Yet a third LVNV case that is instructive is <u>Walls v. United Collection Bureau, Inc</u>., 2012

WL 1755751, 2 (N.D.Ill. May 16, 2012).

Defendants assert repeatedly that the letter is not confusing because it accurately specifies that LVNV is the "current owner of the debt." First, LVNV is not so identified. The letter refers to LVNV simply as "Current Owner." Current owner *of what?*, a significant number of unsophisticated debtors might reasonably ask themselves. Second, defendants ignore the plain language of the statute, which requires that the "creditor to whom the debt is owed" be identified, not the "current owner of the debt." This statutory language makes sense because an unsophisticated consumer likely does not ask himself, "Who owns the debt?" or think about debt in terms of "ownership." Rather, he wants to know who is owed the money. In addition, the letter's designation of the "original creditor" can be viewed as making the letter even more confusing in light of the fact that no phrase like "current creditor" is used.

We reject defendants' contention in their reply brief that what plaintiff is complaining of is "immaterial" information. The statute expressly requires identification of the creditor to whom the debt is owed; when that information is presented in an arguably confusing manner, it could influence the consumer's decision. For example, it could cause an unsophisticated consumer to be concerned about the possibility of being defrauded or about paying the incorrect creditor and continuing to have outstanding debt. <u>See Braatz v. Leading Edge Recovery Solutions, LLC</u>, No. 11 C 3835, 2011 U.S. Dist. LEXIS 123118, at *4 (N.D.Ill. Oct.21, 2011). The letter at issue engenders confusion sufficient to state a claim for violation of § 1692g of the FDCPA. Accordingly, the motion to dismiss will be denied.

23.   The facts here would be analogous to <u>Walls</u> if the letter to Ms. Carter had at least

referenced LVNV somewhere as a creditor.  Here, however, LVNV isn't even mentioned, let

alone identified as the "current owner of the debt."  Thus the violation is even more clear than in

<u>Walls</u>.

10

24.     Moreover, defendants' argument that the misidentification of the creditor is not a material misrepresentation violating the FDCPA was soundly rejected in Bourff v. Rubin Lublin, LLC, 674 F.3d 1238 (11th Cir. 2012).  The district court had concluded that the error in listing BAC, the entity to whom the debt was assigned for collection purposes, as the creditor "was a harmless mistake in the use of the term because BAC had the power to foreclose on the property or otherwise to act as the creditor on the loan."  The Court of Appeals disagreed, reversing the district court because "The identity of the 'creditor' in these notices is a serious matter." 674 F.3d at 1241. Similarly, the Sixth Circuit has held that the mis-identification of the servicer in a foreclosure complaint as the owner of the account materially violated the FDCPA. Wallace v. Washington Mut. Bank, F.A., 683 F.3d 323, 326-28 (6th Cir. June 26, 2012).[10] Similarly, in Suquilanda v. Cohen & Slamowitz, LLP, 2011 WL 4344044 (S.D.N.Y. 2011), where MRC Receivables Corporations "held title" to putative debts while Midland Credit Management was (like Resurgent here) the servicer for the debt, the Court held that a collection letter violated § 1692e by identifying Midland Credit as the creditor when in fact MRC held title to the debt, noting that the least sophisticated consumer could be confused as to the identity of the putative creditor. Id. at * 7.

> **D.   By suing without standing to do so, defendants threatened and took action that could not legally be taken and sought to collect charges not permitted by law.**
>
> **a)   Resurgent had no standing to bring suit, a fact Defendants affirmatively misrepresented to consumers and to the court.**

24.     Under New York law, for an assignee to have standing and capacity to sue, the assignee

_____

10 Wallace at 324 ("Should the Ohio courts decide that a potential mortgagee may anticipate transfer of the note and mortgage and bring valid foreclosure proceedings in advance [in its own name], the district court will have to decide the impact of such a holding on Wallace's claim for damages under the Fair Debt Collection Practices Act. We do not agree, however, with the district courts of this Circuit that have treated the debate in Ohio over standing to bring a foreclosure action as dispositive of whether a statement was materially misleading under the Act.")

must be the "real party in interest,"[11] which means that the assignee "must have some title, legal

or equitable, to the thing assigned."[12] Merely granting the power to sue on or enforce a claim or

set of claims is not enough for a valid assignment.[13]   Essential to an assignment is that the

assignor is *entirely* divested of all control over the thing assigned.[14] In Spencer an instrument

giving an attorney the "power to commence or prosecute any suit or action or other legal

proceedings for the recovery of damages, debts, demands, choses in action, causes or things

whatsoever" did not suffice to show that legal title to the claim had actually been assigned.[15]

22.    Resurgent never had title to the putative debts, which remained with LVNV, and thus

never had standing to file suit. Since at least 2006, LVNV has been using various law firms to

file hundreds of collection suit in the name of Resurgent. SAC ¶ 33 Despite the fact that a NY

Supreme Court judge ruled in 2006 the LVNV cannot have Resurgent file suits in its own name

to collect debts owned by LVNV, FAC ¶34, LVNV continued to do so through the date of this

filing of this complaint five years later.

23.    As they did with all class members, Defendants filed collection lawsuits against Fritz

stating, "Plaintiff [Resurgent], as purchaser and assignee of the account herein, owns and retains

all beneficial rights and interests therein." SAC ¶ 45. This statement is false. Resurgent was *not*

the "purchaser and assignee" of the alleged account, nor did it "own and retain all beneficial

---

11 See Carvel Farms Corp. v. Bartomeo, 272 N.Y.S.2d 507, 510 (N.Y. Sup. Ct. Westchester County 1965) (despite CPLR § 1004 supplanting the explicit use of "real party in interest" in § 210 of the old Practice Act, the real party in interest requirement was not "stricken from the law" and it has since become a requirement of substantive law).

12 Spencer v. Standard Metals & Chems Corp., 237 N.Y. 479, 480-81 (1924). Spencer interpreted the phrase "real party in  interest" under § 210 of the old Civil Practice Act.  § 210's successor provision, CPLR § 1004, provides an enumerated list of representatives who may bring suit by or against a party.

13 See Advanced Magnetics, Inc. v. Bayfront Partners, Inc., 106 F.3d 11, 17-18 (2nd Circ. 1997) ("The grant of a power of attorney,  however, is not the equivalent of an assignment of ownership; and, standing alone, a power of attorney does not enable the grantee to bring suit in his own name" (citing Titus v. Wallick, 306 U.S. 282, 289 (1939)).

14 Richstone v. Chubb Colonial Life Insurance, 1999 WL 287332 *6 (May 7, 1999, S.D.N.Y.).

15 Spencer, at 481-82.

12

rights in interests therein." SAC ¶ 45. Moreover, Resurgent did not have standing to legally file, continue, or prosecute suit in its own name seeking to collect the alleged debts. SAC ¶ 45. Further, Resurgent demanded judgment in its name plus court costs. Specifically, the complaint states, "Plaintiff [Resurgent] demands judgment against the defendant(s) for [a sum certain, and interest], plus costs of this action." Resurgent had no right to judgment nor to costs of action as they has no standing to file suit in the first instance. SAC ¶ 46 The summons made similar demands, stating, "upon your failure to answer, judgment will be taken against you [in the name of Resurgent] for [a sum certain, and interest], plus costs of this action." SAC ¶ 47

24.   Defendants do not dispute that Resurgent had no standing to file suit in its own name. Indeed, beginning as early as November 2, 2010, Defendants began filing "motions to amend caption," SAC 89, admitting that the express representations in the original complaints were false. In the motion to amend, Defendants admitted that in fact LVNV is the "purchaser and assignee of the account herein" and has "*sole* ownership of all right, title and interest therein." SAC ¶ 56 – 58

25.   Even on default, courts repeatedly denied Defendants "motion to amend," noting that Defendants had no legal authority to do so and was attempting to deny consumers fundamental due process under NY law. <u>Resurgent Capital Servs., LLC v Mackey</u>, 32 Misc. 3d 265, 266, 267 (N.Y. Dist. Ct. 2011).[16] See also SAC ¶¶ 94 – 99, and the cases cited therein. Instead, the only

---

16 As the court held:

   The request to "amend" the caption involves neither a party's "transfer of interest" to another (*see CPLR §1018*), nor the correction of a mere misnomer.... Rather, it presents facts involving a fundamental and fatal defect - - namely, counsel's failure to properly identify the plaintiff in this action. Proper identification of the plaintiff "is a basic requirement of due process." See 82 NY Jur 2d, Parties, §19. If Resurgent Capital Services, LLC is not, in fact, the lawful assignee of the underlying debt allegedly owed to Capital One, the only appropriate response is for the Court to dismiss plaintiff's action. Accordingly, plaintiff's motion to "amend the caption" is DENIED, and the action is DISMISSED. Since Resurgent Capital concededly has no legitimate interest in the subject claim, the dismissal is being made with prejudice as to Resurgent Capital, and any related entities united in interest with it.

remedy was dismissal with prejudice. Id. Incredibly, after moving to amend caption in some suits, Defendants moved forward under the name of Resurgent in others. Without moving to amend or even when the motion to amend was denied, Defendants continued with suit in the name of Resurgent; continued to default consumers in the name of Resurgent; moved to deceive *pro se* consumers into signing stipulations enforced with the threat of judgment to be entered in the name of Resurgent, with costs of court; filed second lawsuits in the name of LVNV while still keeping suits in the name of Resurgent pending, and, indeed, moving for entry of default in the Resurgent case. SAC ¶¶ 83 – 112.[17]

### b) These acts materially violate the FDCPA.

26.     Defendants do not dispute they had no standing to file suit, or demand costs of court, but rather assert that the misrepresentations were not material. Defendants' argument fails.

27.     Just days ago, the Second Circuit issued a ruling that re-affirmed Plaintiffs' arguments that these acts materially violate the FDCPA. Gabriele v. Am. Home Mortg. Servicing, Inc., 2012 WL 5908601, at * 2 (2d Cir. Nov. 27, 2012). The Court defined materiality as follows, "Our case law demonstrates that communications and practices that could mislead a putative-debtor as to the nature and legal status of the underlying debt, *or* that could impede a consumer's ability to respond to or dispute collection, violate the FDCPA." (emphasis added).[18]

---

17 Defendants ignore these facts. Defendants make an odd assertion that the court should "ignore" the allegations related to non-named plaintiffs in the SAC. MTD at 4, n2. Defendants cite cases concerning standing (which is not in dispute) and special pleading rules for fraud (which is not one of the claims asserted here) to create from whole cloth a rule excluding factual allegations related to class members. This is nonsense. A putative class action complaint must include allegations as to class members. See, e.g., Ruggles v. Wellpoint, Inc., 253 F.R.D. 61, 66 (N.D.N.Y. 2008) ("To avoid dismissal of the putative class claim on a Rule 12(b)(6) motion, Plaintiff's allegations must address the four prerequisites for a class action specified in Rule 23(a).") As the least sophisticated standard is objective, how other class members have been deceived by Defendants' acts is argument and evidence as to why a hypothetical least sophisticated consumer may be deceived. See also SAC ¶ 89.

18 Note the disjunctive nature of the standard separated by the word "or." The 2nd circuit district court decisions cited by Defendants that statements are materially false and misleading "if they influence a consumer's decision or ability to pay or challenge a debt." Klein v. Solomon & Solomon, P.C., 2011 WL 5354250 at * 2 (D. Conn. 2011),

23.   _Gabriele_ confirmed that "statements made and actions taken in furtherance of a legal

action" are actionable, although it held that the litigation misconduct complained of by appellant

did not rise to actionable conduct. Importantly, the Court went out of its way to contrast

appellants' case from that in _Sykes_, where the conduct was actionable. The case at bar is far

more similar to _Sykes_ than to _Gabriele_.[19] Further, _Gabriele_ reaffirmed its prior holding that

---

appeal dismissed (Feb. 17, 2012). In contrast, by the disjunctive use of the word "or" _Gabriele_ does not limit the materiality of a misrepresentation to whether it may have an effect on the behavior of the consumer, i.e. "that [it] could impede a consumer's ability to respond to or dispute collection." _Gabriele_ at * 2. Rather, the Second Circuit adds a separate stand-alone standard that is not tied to the effect on the behavior of the consumer, i.e. "communications and practices that could mislead a putative-debtor as to the nature and legal status of the underlying debt." _Gabriele_ at * 2. In other words, so long as the communication or practice could "mislead" as to the "nature and legal status" of the putative debt, it is still a material violation, even if it does not affect the behavior of the consumer.  The Second Circuit seems to be adopting in the first phrase a standard for materiality similar to the "reasonable unsophisticated consumer" materiality standard recently adopted by the Sixth Circuit.  Wallace v. Washington Mut. Bank, F.A., 683 F.3d 323, 326-28 (6th Cir. June 26, 2012) ("The materiality standard [for § 1692e] simply means that in addition to being technically false, a statement would tend to mislead or confuse the reasonable unsophisticated consumer.") The context of the _Gabriele_ decision supports the inference. The decision discusses existing Second Circuit caselaw that the least sophisticated consumer standard already excludes "bizarre or idiosyncratic interpretation[s]" or "unreasonable misinterpretations" Id. at 4, and assumes the consumer is not "irrational nor a dolt." Id. at 5.

19 Plaintiffs' undisputed contention is that Defendants never had standing to initiate suit or demand costs. Gabriele did not dispute that the debt collector had a right to bring suit. Gabriele was represented by counsel from the outset, and all of the purportedly deceptive pleadings were sent to his counsel. None of the Named Plaintiffs in the case at bar were represented by counsel when the misrepresentations were made, and all of the misrepresentations were made directly to the consumers, not to counsel. The collection letters failing to identify the creditor (effectively or otherwise) were sent directly to pro se consumers, not to counsel. The summons and complaints of course were all served on unrepresented consumers. All Named Plaintiffs but Davis were pro se for months after they received the summons and complaint. Casertano was pro se for two years from the filing of the Resurgent collection lawsuit. Moreover, out of the _hundreds_ of class members sued, all but a handful had (and have) no counsel. See DE 28-2 pp. 42 – 45 (docket sheet showing _none_ of the consumers sued that year were represented by counsel).  At least one of the named plaintiffs in _Sykes_ was represented by counsel when they moved to vacate their sewer service judgment. 2009 WL 6366742 (S.D.N.Y.) ¶ 210. Gabrielle involved conduct as to one individual consumer. Moreover, the representations in _Gabriele_ did not go to the merits of the collection action and were peripheral matters that would not mislead Gabriele or his counsel to believe "that he had already received an exhibit he had not received, that he had not filed counterclaims that he had filed three months before, or that he was not under consideration for a program he was in mediation to address."  _Gabriele_ at * 5. In sharp contrast, Defendants here and in _Sykes_ systematically filed hundreds of lawsuits seeking judgments based on express misrepresentations to consumers and to the court. _Sykes_ had express misrepresentations in the affidavit of merit submitted to the clerk on default that the affiant had personal knowledge of the account when that was not true. _Sykes_ at 419, 424, fn. 10. Here, Defendants made express misrepresentations to hundreds of consumers and to the civil courts that Resurgent owned the putative debt, had right to file suit, had a right to obtain judgment in its own name, and had a right to costs of court, and had a debt collection license when none of these statements were true. In sharp contrast to _Gabriele_, the misrepresentations here concealed facts from the court and from consumers that were _complete defenses_ to the action. In this way, the misrepresentations here are even worse than the _Sykes_ misrepresentations, at least as to the issue of personal knowledge in the affidavits of fact used to obtain default judgments. If the misrepresentation as to personal knowledge were known, the debt collector would not be able to obtain a default judgment, but, by itself, this would

"falsely representing that the collector had the authority to initiate legal proceedings against the debtor" materially violated the FDCPA. citing to Bentley v. Great Lakes Collection Bureau, 6 F.3d 60, 62 (2d Cir.1993). In Bentley, the court held that collection letters violated the FDCPA by stating that the debt collector was given authority to sue when it did not have such authority. Id. Here, the violation is more egregious. Defendants not only threatened to sue, they actually sued in the name of Resurgent without the legal authority to do so. As discussed in the licensing section below, threatening to take an act prohibited by law and actually taking an act prohibited by law in connection with the collection a debt violates the FDCPA. § 1692e(5).

22.     The Gabriele re-affirmation that false representations in pleadings can be the basis of an

---

not provide Sykes class members a complete defense to the action; the debt collector could simply attempt to prove its case in another manner. In contrast, the misrepresentation to class members here hid two complete defenses.
     Lastly, Gabriele notes that, "Within the context of an adversary proceeding in state court between two **represented parties**, these allegations simply do not state plausible claims under the FDCPA." Gabriele at * 5 (emphasis added). In contrast, here misrepresentations to named plaintiff were not made when they were represented by counsel, and almost none of the class members are represented by counsel. In a footnote to the quoted sentence, the Court stated:

> As we have recognized in past decisions, the protective purposes of the FDCPA typically are not implicated "when a debtor is instead protected by the court system and its officers." Simmons v. Roundup Funding, LLC, 622 F.3d 93, 96 (2d Cir.2010) (holding that inflated proof of claim in bankruptcy court cannot form basis of FDCPA action). In Connecticut, "the state foreclosure process is highly regulated and court controlled." Derisme v. Hunt Leibert Jacobson P.C., No. 10 Civ. 23, 2012 WL 3000386, at *16 (D.Conn. July 23, 2012). When that is the case, the state court's authority to discipline will usually be sufficient to protect putative-debtors like Gabriele from legitimately abusive or harassing litigation conduct. But see Sykes, 757 F.Supp.2d at 423–24.

> Id. at fn. 2

In Simmons, the Court had also noted that the bankruptcy process is the claims process is "highly regulated and court controlled," Simmons at 96, just as is the foreclosure process. This is not true with NY civil court debt collection. "There were 241,195 debt collection lawsuits filed in New York in 2009, where 99% of the debtors were not represented by counsel, and where 66% of these cases resulted in defaults." Diaz v. Portfolio Recovery Associates, LLC, 2012 WL 661456 at * 8 (E.D.N.Y. Feb. 28, 2012) report and recommendation adopted, 2012 WL 1882976 (E.D.N.Y. May 24, 2012).
     Note that the Court pointedly stated in the footnote "but see" Sykes when it referenced consumers being protected by the highly regulated court controlled foreclosure process. Just as in Sykes, the misrepresentations in the case at bar that Resurgent had title to the debt and a right to sue and that it had a debt collection license would be as misleading to a civil court judge as it would to any consumer. The misrepresentations conceal from the civil court just as much as it does from consumers that consumers have two complete defenses to the collection action. In this way, civil courts cannot be presupposed to offer any protections for consumers from these express misrepresentations.

16

FDCPA action is in keeping with a long line of cases.  See, e.g., Bourff v. Rubin Lublin, supra; Grdn v. Leiken, Ingber & Winters, P.C., 643 F.3d 169 (6th Cir. 2011)(attachment to a motion for default); McCollough v. Johnson, Rodenburg & Lauinger, LLC 637 F.3d 939 (9th Cir. 2011) (defendant violated FDCPA by requesting attorney fees in its underlying state complaint for collection of credit card debt); Gearing v. Check Brokerage Corp., supra, (state court complaint incorrectly alleged subrogee status); Grant-Hall v. Cavalry Portfolio Services, LLC, supra ("The filing of a legally defective debt collection suit can violate § 1692e where the filing falsely implies that the debt collector has legal recourse to collect the debt."); Coble v. Cohen & Slamowitz, LLP, 824 F.Supp.2d 568, 572, 2011 WL 5142577, 4 (S.D.N.Y. Oct. 31, 2011) (allegations that defendants were on notice of the falsity of the Midlantic affidavits and continued to enforce those collections actions despite this knowledge); Winemiller v. Worldwide Asset Purchasing, LLC, 2011 WL 1457749, 6 (D.Md. April 15, 2011) (statements and representations in Defendants' affidavits were allegedly false); Harrington v. CACV of Colorado, LLC, 508 F.Supp.2d 128, 136 (D.Mass. 2007) (fraudulent motion for default in state court).

23.    The state court collection complaints also violate §1692e(2) (false representation of the legal status of the debt), §1692e(2)(B) (misrepresenting the compensation which may lawfully be received) and §1692e(10) (false representation in an attempt to collect on the debt).  They falsely allege that Resurgent "owns and retains all beneficial interest in" the account on which it seeks to collect.  See, e.g., Carter Complaint at Para 5, Doc. 28-3 at p. 13.  In fact, as alleged, Resurgent did not own the debts.  Certainly this "mislead a putative-debtor as to the nature and legal status of the underlying debt."  Indeed, it could do nothing else.

24.    This is not trivial.  Resurgent's false allegation would influence the least sophisticated consumer's "impede a consumer's ability to respond to or dispute collection."  The consumer

17

could raise a defense of lack of standing in the state court suit, as in fact the named plaintiffs who were represented by counsel did, and thereby have the case dismissed.[20] The ability to get a lawsuit dismissed is a significant right for an alleged debtor.  Lack of standing is thus far from the type of technical violation that was at issue in the cases cited by defendants, such as Hasbrouck v. Arrow Financial Services, LLC, 2011 WL 1899250 (N.D.N.Y. May 19, 2011).[21]

25.     Filing suit without standing to do so is analogous to a debt collector's filing a time-barred suit.  In both instances, the suit falsely implies that the plaintiff has a legitimate right to a state court judgment.  See, Kimber v. Fed. Fin.Corp., 668 F.Supp. 1480, 1489 (M.D.Ala. 1987) ("the corporation implicitly misrepresented to Kimber the status of the debt, and thereby misled her as to the viability of legal action to collect.").[22]  The materiality of the misrepresentations is the same in both contexts.  As the court held in Kimber, "consumers would unwittingly acquiesce" to a time-barred lawsuit instead of defending against it.  Id., at 1487.  Here too, the implicit representation that the collector has a right to bring such an action, when in fact no such right exists, deceives the least sophisticated consumer into unwittingly acquiescing and not raising

---

20 For the named plaintiffs, the result of their raising lack of standing was an agreed-upon discontinuance.  Other class members have been successful in preventing Defendants from amending the state court complaint caption to mention LVNV because virtually every court to consider the issue has recognized that this type of amendment is improper when the only plaintiff named in the original complaint lacked standing to sue.  See SAC ¶¶ 88-95.

21 Hasbrouck, which was decided on Summary Judgment, is also distinguishable because there the plaintiff "failed to provide competent and admissible evidence to prove that any of the aforementioned statements are false." Id. at *6.  While the court then proceeded to discuss whether the statements at issue would be material if they were false, its analysis is contrary to both the Second Circuit's Clomon decision and the great weight of authority in that it assesses the actions and reactions of the named plaintiff, not those of the least sophisticated consumer. The Court in Hasbrouck also erred in viewing the false attestation of personal knowledge in a collection affidavit as being not material.  Compare, Midland Funding LLC v. Brent, 644 F.Supp.2d 961, 970 (N.D.Ohio 2009) (finding materiality because "The contents of the affidavit itself, and in particular the fact that the affiant allegedly had personal knowledge that the debt was valid, would effectively serve to validate the debt to the reader.").

22 In Gervais v. Riddle & Assocs., P.C., 479 F.Supp.2d 270, 277 (D.Conn.2007), the court noted that "Common sense dictates that whether a debt is time-barred is directly related to the legal status of that debt." Likewise, standing to sue is directly related to the legal status of the debt.

defenses to the action, and therefore is a material misrepresentation in violation of the FDCPA.[23]

26.     Defendants' argument that the misrepresentation of ownership was not material because the complaints identified the original creditor is a non sequitur as it says nothing about Resurgent's right to sue on the debt.  Indeed, identifying the original creditor lent credence to Resurgent's misrepresentation that it owned the debt.  Moreover, the fact that the four individual plaintiffs in this action challenged Resurgent's standing in the state court cases when they were represented by counsel is irrelevant to whether the least sophisticated consumer would be misled about its ownership of the debt.  Clomon v. Jackson, 988 F.2d 1314, 1318 (2d Cir. 1993) ("The basic purpose of the least-sophisticated-consumer standard is to ensure that the FDCPA protects all consumers, the gullible as well as the shrewd.").

27.     There is an additional reason why the misrepresentation of ownership was also material to a subset of the class, including at least named plaintiff Casertano and class members Alvarez and Williams: they were all sued by both Resurgent and LVNV in separate suits.  (SAC 80-86; 112).   Since these competing actions would engender confusion in the least sophisticated consumer as to the identity of the putative creditor, they too violate the FDCPA.  See, e.g., Suquilanda v. Cohen & Slamowitz, supra.

28.     The cases cited by defendant for the proposition that the misidentification of the proper plaintiff in a state court collection action is immaterial are distinguishable.  In Klein v. Solomon & Solomon, P.C., 2011 WL 5354250 * 2 (D. Conn. 2011), appeal dismissed for failure to file briefs (Feb. 17, 2012), Solomon and Solomon, a debt collection law firm, had filed suit on behalf

---

23 Numerous courts have agreed that filing suit on a time-barred claim violates the FDCPA.  See, e.g., McCollough v. Johnson, Rodenburg & Lauinger, LLC, 637 F.3d 939, 947 (9th Cir. 2011);  Jackson v. Midland Funding, LLC, 468 Fed.Appx. 123, 127, 2012 WL 505919, 4 (3rd. Cir. 2012); Diaz v. Portfolio Recovery Associates, LLC, 2012 WL 661456, 12 (E.D.N.Y. Feb. 28, 2012); Uche v. North Star Capital Acquisition, LLC, 2011 WL 978240 (D.Neb.,2011); Loftis v. Credit Acceptance Corp., 2011 WL 976621 (E.D.Ark. March 182011); Jenkins v. Gen. Collection Co., 538 F.Supp.2d 1165, 1172 (D.Neb.2008).

of CitiMortgage seeking to collect a debt. Solomon alleged that CitiMortgage had "extended credit" to the consumer and that it was a National Banking Association. Id.  Solomon then amended the complaint, deleting the allegations that CitiMortgage was a "National Banking Association," stating that the original contract was with Mortgage It, Inc., and alleging that the note was assigned to CitMortgage *as servicer*. 2010 WL 6574708 ¶ 42. Under Connecticut state law, a mortgage servicer can sue in its own name. Fin. California, Inc. v. Lawyers Title Ins. Corp., 2010 WL 4876014 at * 7 (D. Conn. Nov. 22, 2010) ("Under . . . Connecticut . . . law, servicing agents have the capacity to institute lawsuits on behalf of their principals . . . Thus, as BizNiz's servicing agent on the Loan Transaction, FCI would be a real party in interest . . . and have standing to bring this action."). In Connecticut, CitiMortgage, the mortgage servicer, was as entitled to bring the foreclosure action against Mr. Klien as the holder of the note, the alleged technical defect in the original state court complaint therefore did not involve standing to sue, and the fact that the state court suit was brought under the name of the mortgage servicer would indeed not affect a consumer's "decision or ability to challenge the debt."

29.     In contrast to Connecticut state law on assignment of mortgages, New York state law on the assignment of debts is clear as previously noted: An assignee may not file suit in its own name unless it is assigned title to the debt.

30.     The FDCPA violation in the case at bar case turns on substantive state law.  Because Defendants acted contrary to New York substantive law on assignment, their collection suits violated § 1692e(2)(A) by misrepresenting the "character" and "legal status" of the debts, § 1692e(2)(B) by misrepresenting the "compensation which may be lawfully received," and § 1692e(10) by using a false representation as a means to attempt to collect the alleged debts, including demanding judgment and costs of court. Seeking costs of court also violates § 1692f(1)

20

(seeking any fee, charge, or expense not expressly permitted by law).  Defendants' reliance on several other cases is equally misplaced.  In Lane v. Fein, Such and Crane, LLP, 767 F.Supp.2d 382 (E.D.N.Y. 2011), the court noted that "the plaintiffs do not contest BMC's underlying right to foreclose on their property." Id. at 384. Here, in contrast, plaintiffs' fundamental claim is that under New York law, Resurgent had no right to bring the state court collection actions.  Only LVNV had that right, as owner of the alleged debts and as a properly licensed debt collector. The false statement in Lane was not material because "the plaintiffs' argument that BMC has no standing to foreclose on the Bay Street Mortgage similarly not only has nothing to do with the allegedly false statement, but is also not supported by any allegations of fact in the complaint." Here, the false statement of ownership was critical to Resurgent's need to show standing in state court, and is well supported in the SAC.

31.    Smyth v. Merchants Credit Corp., 2012 WL 2343031 (W.D.Wash., June 19, 2012), is distinguishable because there, the Court simply found the defendants' request for an estimated ex parte fee as statutory court costs in their state court complaint was neither false nor misleading because the fee was expressly permitted under state law.  Here, New York law prohibits suit by an assignee for collection in its own name, so defendants had no right to demand judgment or court costs.

32.    McAffee v. Law Firm of Forster & Garbus, 2008 WL 3876079 at *5 (E.D.N.Y. Aug. 18, 2008), was decided on summary judgment, not a motion to dismiss, and merely held that the pro se plaintiff had failed to produce "any admissible evidence tending to establish misrepresentation."

33.    Nor does a decision rendered subsequent to the filing of Defendants' Motion provide more than superficial support to their cause.  In Broughman v. Chiari & Ilecki, LLP, 2012 WL

21

5880945 (W.D.N.Y. Nov. 21, 2012), the court held that while the debt collector's statement that it could obtain a judgment against the alleged debtor without giving further notice was "technically false," it could not influence his decision to pay the debt or "lull him into inactivity to his detriment" because "the statement would inform even the least sophisticated consumer that he has a specified time in which to act, and prompt him to consult with an attorney, answer the complaint *pro se*, or take some other action to protect his interests." Id. at *4. The same cannot be said of Defendants' misrepresentations here.  Defendants' false assertions of a right to sue and a right to judgment and costs, despite Resurgent's absence both of standing and a license to bring suit, could easily lull the least sophisticated consumer into "inactivity to his detriment" because the consumer would have no reason to challenge these fatal deficiencies in the complaint. Plaintiffs have thus stated a plausible claim for relief under § 1692e, too.

### E.  Defendants violated the FDCPA by litigating without a debt collection license, and by affirmatively misrepresenting that they had a license.

25.    Having a license is a condition precedent to being able to legally collect a debt in New York City for a debt collector governed by NYCAC § 20-490. ("It shall be **unlawful** for any person to act as a debt collection agency without first having obtained a license...") (emphasis added).  Licensure is an important substantive right, not a mere technicality. Resurgent's refusal to be licensed is an attempt to reduce the ability to be held accountable for their FDCPA violations and to be screened out if they have repeatedly violated the FDCPA.[24]  The licensing requirement forces debt collectors to disclose whether they are currently subject to a lawsuit, have had judgments rendered against them, have outstanding unpaid judgments, or whether any

---

24 While the FDCPA is a strict liability statute, it should be pointed out that Resurgent's refusal to be licensed is willful and wanton. On April 16, 2012, Plaintiff filed a letter [DE 22] requesting to be allowed to file an amended complaint, arguing, among other things, that Resurgent LLC was not licensed when it engaged in debt collection through litigation. Despite being put on notice of the claim, two months later when Plaintiff was granted leave and filed an amended complaint [DE 28], Resurgent still was not licensed. FAC ¶ 27.

22

of the individual shareholders or officers have been convicted of a crime. Therefore, the refusal

to be licensed is an to attempt to gain an unfair competitive advantage over its legitimate debt

collection competitors.  "Congress enacted the FDCPA to eliminate 'abusive practices in the debt

collection industry, and ... to ensure that 'those debt collectors who refrain from using abusive

debt collection practices are not competitively disadvantaged.' " Ellis v. Solomon and Solomon,

P.C., 591 F.3d 130, 134 (2d Cir.2010) (quoting 15 U.S.C. § 1692(e); Jacobson v. Healthcare Fin.

Servs., Inc., 516 F.3d 85, 89 (2d Cir.2008)). The licensing requirement is important because it

gives the NY Department of Consumer Affairs some significant enforcement tools to protect

consumers from abusive debt collectors. NY Admin§ 20 § 20-493(b) & (c) (authority to issue

subpoenas for testimony and documents); NY Admin§ 20-494(a) (authority to impose statutory

damages of $700 - $1,000 *per violation*).   Licensure is thus material.

26.      Defendants argue that a debt collector's failure to have a debt collection license is not a

"per se" violation of the FDCPA. MTD p. 9. That is beside the point.  Plaintiffs need not and do

not argue a per se violation. Rather, Plaintiffs argue – and the vast majority of the courts agree –

that failure to comply with a state licensing requirement constitutes an FDCPA violation if the

debt collector attempts to collect through threat of litigation or actual litigation. The debt

collection license is a condition precedent to being able to engage in debt collection, so the threat

to sue (or actual litigation) violates, among other things, the FDCPA prohibition of threatening to

take an action prohibited by law, 1692e(5).[25] The Resurgent Defendants have repeatedly refused

---

25 See Nero v. Law Office of Sam Streeter, P.L.L.C., 655 F. Supp.2d 200, 207 - 211 (E.D.N.Y. 2009) (M.J. Matsumoto) (surveying NY district court decisions and dismissing 1692e(5) claim against unlicensed debt collector because the collection letter did not contain a statement "that one could construe as a litigation threat");*LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1190, 1192 (11th Cir.2010) (failure to comply with state law licensing requirement would support a 1692e(5) claim if coupled with debt collection litigation or threat of debt collection litigation). Bradshaw v. Hilco Receivables, LLC, 765 F. Supp. 2d 719, 728-29 (D. Md. 2011) (debt collector violated 1692e(5) by filing collection lawsuits without first being licensed as required by state law); Goins v. JBC &

to comply with the licensing requirements of various states, and repeatedly been held to violate the FDCPA for doing so.[26]   The FDCPA prohibition of threatening to take an action prohibited by law of course extends to the actual taking of an act prohibited by law.[27]  Even assuming, arguendo, 1692e(5) prohibited only the "threat" to take an act prohibited by law, but not the taking of that act, Defendants are still liable. The debt collection pleadings Defendants filed in the collection lawsuit threatened to take certain acts, none of which could legally be taken as having a debt collection license is a condition precedent to being to be able to collect debts via litigation. The summonses and complaints as to named plaintiffs and class members demanded judgment in the name of Resurgent, and costs of court, see e.g. SAC §§ 47, 48, neither of which Resurgent was entitled to as it was not permitted to file suit at the outset.

---

Associates, P.C., 352 F. Supp. 2d 262, 271-72 (D. Conn. 2005) (debt collector violated 1692e(5) by threatening litigation (e.g. referring to 'statutory penalties as determined by the court') without having a debt collection license).

26 See, e.g., Smith v. LVNV Funding, L.L.C., -- F.Supp.2d ---, 2012 WL 3890255 at * 5 (E.D. Tenn. Sept. 7, 2012) ("plaintiffs state a cause of action against LVNV under § 1692e(5) on the basis that LVNV was not licensed under the TCSA and not only threatened to take, but took, legal action in the filing of its collection lawsuits, which it was not authorized to do under Tennessee law. This Court agrees with plaintiffs, furthermore, that the actual filing of a lawsuit without being properly licensed, not just the threatening of such a collection lawsuit, is prohibited by § 1692e(5)…"); Fiorenzano v. LVNV Funding, LLC, 2012 WL 2562415 at * 5 (D.R.I. June 29, 2012) ("The Court finds that Mr. Fiorenzano's Complaint contains sufficient allegations of LVNV's failure to register as a debt collector with the State of Rhode Island under the RIFDCPA to state a claim for violations of the FDCPA. Consequently, Mr. Fiorenzano's claim that LVNV violated §§ 1692e(10) and 1692f satisfy the plausibility standard for a motion to dismiss, and thus LVNV's Motion to Dismiss these claims is DENIED."); and In re: LVNV et al, Cease and Desist Order issued by the Maryland State Collection Agency Licensing Board dated October 25, 2011, 2011 WL 5894366 at * 9, Exhibit A to SAC, DE 28-2 p. 16 ¶ 19 (LVNV and its related debt collection entities held to violate 1692e(A)(2) (false representations about the "character, amount, or legal status of any debt"), e(5), and e(10) by collecting debts without having a license; entities enjoined from continuing to collect in MD).

27 Poirier v. Alco Collections, Inc., 107 F.3d 347, 350-51 (5th Cir.1997); Bradshaw v. Hilco, supra;  Kuhn v. Account Control Tech., Inc., 865 F. Supp. 1443, 1452 (D. Nev. 1994); Sprinkle v. SB&C LTD, 472 F. Supp. 2d 1235, 1247 (W.D. Wash. 2006) ("[C]ourts have recognized the futility of a statutory scheme that would provide more protection to debt collectors who violate the law than to those who merely threaten or pretend to do so. . . . The opposite conclusion would be akin to attaching liability to one who merely threatens a tortuous act while absolving one who unabashedly completes is. It is safe to say that such an interpretation veers sharply from the legislative purpose behind the FDCPA."); Marchant v. U.S. Collections West, Inc., 12 F.Supp.2d 1001, 1006 (D.Ariz.1998) ("defendants assert that they made no threat; they simply took action. I think that such argument elevates form over substance. To argue that a collection agency can avoid the strictures of the FDCPA simply by acting where it has no legal authority ... would defy the very purposes of the section.").

24

27.   Similarly, seeking the "cost of collection" without the legal capacity to file suit violates 1692f(1) ("the collection of any amount.. unless expressly... permitted by law); and 1692e(2)(B) (the "false representation of... any... compensation which may be lawfully received by any debt collector for the collection of a debt).

28.   A materiality requirement has never been applied to an FDCPA claim on the failure of a debt collector to comply with a state or city licensing requirement. Nothing in the materiality cases cited by Defendants suggests that the materiality requirement in anyway overturns prior caselaw as to what constitutes a violation of 1692e or its subparts. Therefore, any materiality requirement must be read in harmony with prior decisions. Where state law prohibits an act, materiality should not even apply. In the alternative, determination by city council (or state legislature) that certain debt collection activity is sufficiently detrimental as to be prohibited by law should presumptively be deferred to as a finding of materiality.

29.   In the second alternative, the failure of a debt collector to be licensed may in fact affect the consumer's decision to challenge or dispute the debt. The failure of a debt collector to be licensed operates as a complete defense to the collection lawsuit.  For example, <u>Centurion Capital Corp. v. Druce</u>, 14 Misc. 3d 564  (N.Y. Civ. Ct. N.Y. County 2006) held:

> Debt collection agencies must be licensed. (*See* NYCAC 20–490). A plaintiff that is required to be licensed must allege that it is and include its licensing information in its complaint. (*See* CPLR 3015(e)). Because plaintiff is not licensed and consequently did not (and cannot) meet the requirements of CPLR 3015(e), its complaint must be dismissed pursuant to CPLR 3211(a)(7).

Indeed, this licensing requirement is so fundamental that the New York City Civil Court includes lack of a debt collection license as an affirmative defense in the form pro se answers it creates, along with expiration of the statute of limitations and lack of standing.  See DE 28-4, p. 35 item # 10. Further, the failure to be licensed cannot be cured after the party already took the act for

which it was required to be licensed. B & F Bldg. Corp. v. Liebig, 76 N.Y.2d 689, 694, 564 N.E.2d 650, 652 (1990). A party forfeits its rights to compensation if it fails to be licensed as required under NY state law. Ben Krupinski Builder & Associates, Inc. v. Baum, 36 A.D.3d 843, 844, 828 N.Y.S.2d 583, 584 (App. Div. 2d Dep't. 2007)

30.     Indeed, Illinois courts have gone so far as to hold that judgments entered in Illinois Courts by LVNV, who did not have a debt collection license required by state law when it filed suit or entered judgment, made the judgments void in ab initio. LVNV Funding, LLC v. Trice, 2011 IL App (1st) 092773, 952 N.E.2d 1232, 1238 appeal denied. 962 N.E.2d 483 (Ill. 2011) ("If LVNV had not registered before it filed the complaint against Trice, it committed the crime of engaging in debt collection without proper registration. The crime, if proven, makes void the judgment LVNV obtained against Trice.").

### F.   The Resurgent Defendants violated the FDCPA by inflating the amount it reported to the credit reporting agencies consumers owed LVNV.

31.     Defendants misapprehend the nature of Plaintiffs' credit reporting claims. Plaintiffs do not contend "that it was somehow improper for Resurgent to report to credit reporting agencies that the [underlying] debt was owed to LVNV." MTD p, 20. Nor are Plaintiffs attempting to bring claims under the Fair Credit Reporting Act. MTD p. 21. Rather, Plaintiffs' claim is that the Resurgent Defendants violated the FDCPA by reporting to the credit reporting agencies ("CRAs) that LVNV was owed more than it could legitimately claim to be owed. SAC ¶¶ 12, 19, 50 – 55, 113 – 118.

32.     The amount reported was improperly inflated because it included court costs allegedly owed to LVNV. This was erroneous because Plaintiffs are not indebted to *LVNV* for costs associated with suits illegally filed by *Resurgent*. Under NY state law, a creditor is not entitled to court costs, disbursements, or other expenses unless and until it obtains a judgment against a

26

consumer. CPLR § 8101 ("The party *in whose favor a judgment* is entered is entitled to costs in the action, unless otherwise provided by statute or unless the court determines that to so allow costs would not be equitable ....") (emphasis added); § 8301(a) ("A party *to whom costs are awarded* in an action or on appeal is entitled to tax his necessary disbursement.") (emphasis added). No judgment was or could have been properly entered in favor of LVNV since, as explained earlier in this brief, Resurgent lacked standing to sue. The Resurgent Defendants nevertheless reported to the credit reporting agencies that Fritz, for example, owed LVNV not just the amount for which she had been sued, but also approximately $160 in court costs, disbursements, or other expenses (hereafter "costs") related to the collection lawsuit filed by Resurgent. SAC, Para. 54- 55.

33.     Rolling costs of court into the amount claimed to be due absent a judgment has consistently been held to violate the FDCPA, including Sections 1692e, 1692e(2)(A) & (B), 1692e(5), and 1692f(1). See, e.g., <u>Shula v. Lawent</u>, 359 F.3d 489, 491 (7th Cir.2004)(Posner, J.) (because the state court had not awarded costs, the consumer had not "become obligated to pay the court costs" and rolling court costs into the amount claimed due violated the FDCPA); <u>Foster v. D.B.S. Collection Agency</u>, 463 F.Supp.2d 783, 805 (S.D.Ohio 2006) ("Any debt collector's attempt to recover court costs in the absence of a valid judgment constitutes a violation of 15 U.S.C. § 1692f"); <u>see also</u> <u>Eads v. Wolpoff & Abramson, LLP</u>, 538 F.Supp.2d 981, 986, 987 (W.D.Tex. 2008) (rolling in the $225 court filing fee into "the current amount due" violated 1692e(5) and 1692f(1)).

34.     §1692e(8) specifically prohibits a debt collector from "[c]ommunicating or threatening to communicate to *any person* credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed") (emphasis added).

"Any person" includes third parties, such as CRAs, the original creditor, another debt collector, or subsequent assignees of the putative debt. See, e.g., Burdick v. Palisades Collection LLC, 2008 WL 80943, at * 2 (C.D.Cal. 2008) ("Plaintiff states a claim for violation of § 1692e(8) by alleging that LVNV had notice that Plaintiff disputed the debt and yet failed to disclose that the debt was disputed when it assigned the account to other debt collectors and sold the debt." (emphasis in the original) (internal citations omitted)); Stiff v. Wilshire Credit Corp., 2006 WL 141610 (D.Ariz., 2006) (same); Perez v. Telecheck Servs., Inc., 208 F. Supp. 2d 1153, 1156 (D. Nev. 2002) (same); Kinel v Sherman Acquisition II L P, 2007 WL 2049566 (S.D.N.Y. 2007) (consumer states a claim under 1692e(8) when alleging one debt collector transferred debt to another debt collector without informing the subsequent debt collector that the consumer disputed the debt); Magrin v. Unifund CCR Partners, Inc., 52 Fed. Appx. 938, 939 (9th Cir. 2002) (debt collector violated 1692e, 1692e(8), and 1692e(1)(A) when it forwarded an account to another debt collector without noting that the account was disputed.).

35.     A debt collector's credit reporting regarding consumers is a "communication" that is "directly or indirectly" undertaken to collect a debt. 15 U.S.C. § 1692a(2) ("The term 'communication' means the conveying of information regarding a debt directly or indirectly to *any person* through any medium.") (emphasis added); see also, § 1692a(6) (defining debt collection to include attempts made "directly or indirectly"). By inflating the amount of the debt it informed the CRAs that class members such as Fritz owed to LVNV, the Resurgent Defendants violated not only §1692e(8), but also §1692e generally, §1692e(2)(A) (falsely representing the "amount" of the debt), and §1692e(10) (false representation in connection with an attempt to collect a debt).   Numerous courts have thus held that mis-reporting an alleged

debt to a CRA violates the FDCPA.[28]

36.    Because inaccurate credit reporting can be so harmful to a consumer, none of the foregoing cases has rejected an FDCPA claim on the ground of materiality.  Indeed, the more a debt collector contends in its credit reporting that a consumer owes, the more derogatory that reporting is in the eyes of current or perspective creditors who view the report, and thus the more pressure it puts on the consumer to pay the putative debt. A creditor's "ability to report on the credit habits of its customers is [a] powerful tool designed, in part, to wrench compliance with payment terms from its cardholder." Rivera v. Bank One, 145 F.R.D. 614, 623 (D.P.R. 1993). A creditor's false credit reporting "can only be seen as an attempt to tighten the screws on a non-paying customer." Id.  Accord, Sullivan v. Equifax, 2002 WL 799856 at * 5 (E.D. PA. 2002) (citations omitted). Thus unless the discrepancy is trivial – a matter of pennies or a few dollars – it is certainly plausible that the misrepresentation would affect the decision of a consumer whether to challenge the debt or dispute it and is therefore material.  Here, the discrepancy is $160 -- the amount of the illegally claimed court costs.  This is not a trivial sum to an impecunious debtor.  A debt collector makes a misrepresentation in contravention of the

---

28 See  Akalwadi v. Risk Mgmt. Alternatives, Inc., 336 F. Supp. 2d 492, 502, 503 (D. Md. 2004) ("a debt collector's reporting of a consumer's debt to a credit reporting agency would be covered by FDCPA § 1692e if the communication is false, deceptive, or misleading… RMA's double reporting of the same debt twice to Equifax is a false representation of the character and amount" of the debt alleged to be owed.); Davis v. Trans Union, LLC, 526 F. Supp. 2d 577, 586-87 (W.D.N.C. 2007) ("[A] debt collector's reporting of a consumer debt to a credit reporting agency would be covered by the FDCPA § 1692e if the communication is false, deceptive, or misleading.") (quotations and citations omitted); Finnegan v Univ. of Rochester Med. Ctr., 21 F Supp 2d 223, 229 (W.D. N.Y. 1998) (debt collector reporting a debt to the credit reporting agency that the consumer disputed owing stated a claim for violations of 1692e(2)(A), 1692e(8), and 1692f(1)); Sullivan v. Equifax, 2002 WL 799856 at * 4, 5,  (E.D .PA. 2002) ("Because reporting a debt to a credit reporting agency can be seen as a communication in connection with the collection of a debt, the reporting of such a debt in violation of the provisions of § 1692e(8) can subject a debt collector to liability under the FDCPA); Purnell v. Arrow Fin. Services, LLC, 303 F. App'x 297, 302-03 (6th Cir. 2008) (The consumer's claims under 1692e(2), § 1692e(8), and § 1692f(1) for each time a debt collector reported the debt to the credit reporting agencies within one year of the filing of the FDCPA action are not time barred); Karony v. Dollar Loan Ctr., LLC, 2010 WL 5186065 at *3 (D. Nev. 2010) (Consumer states a cause of action under 1692e and 1692f for debt collector continually reporting debt on husband's credit report that he alleges is solely that of his wife).

FDCPA when, as here, it attempts directly or indirectly to collect a debt that is not legally chargeable to the consumer (in whole or in part).[29]

### G.   No meaningful review by harris defendants, argued in the alternative.

37.   Plaintiffs' primary argument is that the Resurgent Defendants to file the collection lawsuit in the name of Resurgent (who has few assets) rather than LVNV (which holds the assets) in order to attempt to minimize the exposure of the Resurgent Defendants to class action statutory damages. SAC ¶ 18.

38.   The SAC alleged, in the alternative, that to the degree the Harris Defendants contend that their signing of false statements of fact was inadvertent, they would be defending this FDCPA action by asserting they did not perform a meaningful review of the written communications they sent, which itself is a violation of the FDCPA. SAC ¶ 14. In response, Defendants move to dismiss (MTD pp. 19, 20), referencing lack of meaningful review cases where an attorneys lends the use of his letterhead to a collection agency without any meaningful review of the file. However, the caselaw is not so limited. In Miller v. Upton, Cohen & Slamowitz, 687 F.Supp.2d 86, 97-98 (E.D.N.Y. 2009), a debt collection law firm filed a collection suit which made a demand for attorney's fees. The cardholder agreement of the putative debtor stated the account was governed by Ohio law, which did not allow the recovery of attorneys' fees. Id. The Court

---

29 See, e.g., Ditty v. CheckRite, Ltd., 973 F. Supp. 1320 (D. Utah 1997) (adding a $15 service fee falsely represent the amount of the debt); Patzka v. Viterbo College, 917 F.Supp. 654, 658-59 (W.D.Wis.1996) (an attempt to collect a fee prohibited by law violates 1692e(5)); Bernstein v. Howe, 2003 WL 1702254 (S.D. Ind. Mar. 31, 2003) (collection letter demanding payment of a specific amount ''plus interest and attorneys fees'' violated the F.D.C.P.A. because no attorney fees were actually owed at the time); Bernstein v. Howe, 2003 U.S. Dist. LEXIS 5284, * 13 – 15 (S.D. Ind. 2003) (collection letter demanding payment of a specific amount ''plus interest and attorneys fees'' violated the FDCPA because no attorney fees were actually owed at the time); Newman v. CheckRite California, Inc., 912 F. Supp. 1354, 1367 - 1370 (E.D. Cal. 1995) (debt collector violated both §§ 1692e(5) and 1692f(1) by adding an $85 charge that was not expressly authorized by the contract or allowed by state law); Shula v. Lawent, supra, 359 F.3d at 491 - 493 (7th Cir. 2004); Duffy v. Landberg, 215 F.3d 871, 875 (8th Cir.2000) (letter from debt collector stating that, in the event it proceeded with litigation, it would seek ''...attorney's fees, and such other remedy as the court may grant'' violated § 1692e(5) where state law did not provide for attorney's fees given the amount of the debt sought to be collected). The Resurgent Defendants may therefore be held liable for the improper inflation of the amount of the debt to LVNV they reported to CRAs.

30

held that the law firm's failure to review the choice of law provision of a cardholder agreement prior to filing suit to collect the putative debt violated the FDCPA's requirement to perform a meaningful review. Id. "This Court thus concludes that, in cases such as here, where an attorney commences suit in so uninformed a manner that he is ignorant even as to what law governs his suit, it cannot be said that he has undertaken a level of review sufficient to satisfy even the most general requirements applicable to attorney conduct, let alone the more focused review requirements established by the FDCPA." Id.

39.    Assuming that the Resurgent Defendants did not instruct the Harris Defendants to file suit in the name of Resurgent, Plaintiffs state a plausible claim the Harris Defendants failed to conduct a meaningful review prior to filing *hundreds* of suits in the name of Resurgent. Fewer things can be more basic in litigation than knowing the name of your client, or writing that name on the face of the complaint. Certainly, it is more basic than knowing the choice of law provision of the underlying credit card agreement.

## IV.  Defendants violated GBL § 349

67.    New York's GBL § 349(a) provides that "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful." The statute creates a private right of action for any person injured by a violation of the statute. GBL § 349(h). The elements of a GBL § 349 claim are that "1) the act or practice was consumer-oriented; 2) the act or practice was misleading in a material respect; and 3) the plaintiff was injured as a result." Spagnola v. Chubb Corp., 574 F.3d 64, 74 (2d Cir. 2009).

### A.    Defendants' acts or practices were consumer oriented.

75.    Defendants contend that the SAC does not allege that their GBL § 349 violations were "consumer oriented." This argument is without merit. To be "consumer oriented" the acts or

31

practices must "have a broader impact on consumers at large." Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A., 85 N.Y.2d 20, 25, 647 N.E.2d 741, 744 (1995). The SAC specifically alleges Defendants' conduct has a "broad impact on consumers at large." "This includes threatening, filing, prosecuting, and maintaining hundreds of lawsuits where Resurgent has no standing to bring suit, or stating that Resurgent was the purchaser, owner, or assignee of the putative debt when this was not true; collecting without a license; and false and confusing reports" to the credit reporting agencies.  SAC ¶¶ 144, 145

76.    Defendants also contend that Plaintiffs do not allege that Defendants "affirmatively sought transactions with consumers," and thus that Plaintiffs have not alleged Defendants engaged in "consumer oriented activity." MTD p. 23. Defendants misapprehend the broad scope of the statute. GBL § 349 is intentionally designed to provide far reaching consumer protections: "the reach of these statutes 'provide[s] needed authority to cope with the numerous, ever-changing types of false and deceptive business practices which plague consumers in our State' (NY Dept of Law, Mem to Governor, 1963 NY Legis Ann, at 105)".  Karlin v. IVF Am., Inc., 93 N.Y.2d 282, 291 (1999). As such, the statute applies to "virtually all economic activity." Id. at 290. "The critical question, then, is whether the matter affects the public interest in New York." Securitron Magnalock Corp. v. Schnabolk, 65 F.3d 256, 264 (2d Cir. 1995).

77.    In any case, courts have specifically held that GBL § 349 applies to debt collection litigation, finding liability not just for debt collection law firms but also  the  debt collection creditors and debt collectors in joint ventures with them. In fact, Defendant Harris has previously lost the argument that its debt collection violations were not actionable under GBL § 349. See Sykes 757 F.Supp.2d. at 424.

78.    Similarly, a debt collection law firm and its debt collector client jointly violated GBL §

32

349 when they filed time-barred debt collection lawsuits, and did so without conducting meaningful review of the facts alleged in the debt collection complaint. <u>Diaz v. Portfolio Recovery Associates, LLC</u>, 2012 WL 661456 * 13,14 (E.D.N.Y. Feb. 28, 2012) (M.J. Pollak) <u>report and recommendation adopted</u>, 2012 WL 1882976 (E.D.N.Y. May 24, 2012) (J. Brodie).

### B.   <u>Defendants' conduct was materially misleading</u>.

79.    The second element for a claim under GBL § 349 is that "the act or practice was misleading in a material respect." <u>Spagnola</u> at 74. A deceptive practice need not reach the level of common-law fraud to be actionable under GBL § 349. Courts employ an objective test to determine whether conduct is "deceptive or misleading in a material way": whether representations or omissions are "likely to mislead a reasonable consumer acting reasonably under the circumstances." <u>Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.</u>, 85 N.Y.2d 20, 25, 647 N.E.2d 741, 744 (1995). The facts and argument as to materiality under the FDCPA apply equally to materiality under GBL § 349. The prior arguments are incorporated by reference.

80.    The use of false affidavits in a debt collection lawsuit violates GBL § 349. <u>Sykes</u> at 428. As previously indicated, filing suit without title is similar to filing a time barred debt collection lawsuit as the consumer has an absolute defense to the suit brought by that specific putative creditor. As previously indicated, <u>Diaz I</u> held filing a time-barred collection suit, and doing so without meaningful attorney review, was a materially misleading practice.  <u>Diaz,</u> 2012 WL 661456 at * 13.

81.    Similarly Defendants' false representation in the collection lawsuits that Resurgent was "purchaser and assignee" of the putative debt and did "own and retain all beneficial rights in interests therein" violates GBL § 349; as does Resurgent's unlicensed debt collection litigation

33

using the license number of LVNV. SAC ¶ 27, 35, 45, 46. <u>Midland Funding LLC v. Tagliafferro</u>, 33 Misc. 3d 937, 942, 935 N.Y.S.2d 249 (Sup. Ct. 2011) ("Plaintiff, Midland Funding LLC DBA in New York as Midland Funding of Delaware LLC, commenced this [debt collection] action… A search of the Department of Consumer Affairs records shows that license number [listed on the complaint] belongs to Midland Funding of Delaware LLC and not Midland Funding LLC. Which means only Midland Funding of Delaware may attempt to collect this debt in New York City. In fact, this practice may be a "deceptive" act or practice under General Business Law § 349 in that it is impossible for the defendant to know which entity is the correct plaintiff. The complaint alleges that this consumer credit debt was taken by assignment from the original creditor. It is impossible for either the defendant or the court to determine which of the two Midland LLC's named in the complaint is the proper one.")[30]

### C.   Defendants' actions caused harm.

83.    The third element of a claim under GBL § 349 is actual injury. Although "actual" injury must be proven in order to recover under the statute, it need not be "pecuniary harm." <u>Stutman</u>, 95 N.Y.2d at 28-32 (citations omitted). Defendants assert Plaintiffs' claims as to damages are "purely conjecture" and "purely speculative." Not so. The SAC outlines damages extensively. SAC ¶¶ 13, 113 – 118. This includes the time spent and costs incurred by

---

30 The misrepresentations in <u>Midland</u> that gave rise to a GBL § 349 claim are similar to the case at bar. Resurgent did not have a debt collection license, just as Midland Funding, LLC did not. Resurgent affirmatively misrepresented in its collection lawsuit that it had a debt collection license when it did not, thus concealing from consumers what would be complete defense to the collection action. <u>Centurion Capital Corp</u>. at 569. Instead Resurgent listed the license of LVNV. Similarly, Midland Funding, LLC concealed its lack of license by affirmatively listing the license of Midland Funding of Delaware LLC. Just as the double naming of the Midland entities is deceptive act in violation of GBL § 349 because "it is impossible for the defendant [consumer] to know which entity is the correct plaintiff [debt collector]… [and] impossible for either the defendant or the court to determine which of the two Midland LLC's named in the complaint is the proper one", <u>Midland Funding LLC</u> at 942, the same would be true for Casertano and other class members who have two pending suits for the same debt, one by Resurgent and one by LVNV, both asserting in the complaint that they are the "purchaser and assignee of the account herein, [and] owns and retains all beneficial rights and interests therein."

consumers to defend against collection lawsuits that should never have been filed and should

never have been prosecuted; and the amounts wrongfully taken from consumers from said suits.

There is nothing speculative about this.[31]

## IV. PROCEDURAL ISSUES

### A.   None of plaintiff's claims are barred by collateral estoppel

#### (a) As to the named plaintiffs, no issues have been resolved in prior actions because there have been no final judgments

84.     No final judgment has been entered in the state court debt collection actions Defendants

have filed against the four Named Plaintiffs.  See SAC ¶¶ 67, 73, 78, 83, 84.  Resurgent could

seek a default judgment in its action against Plaintiff Casertano, but has not done so.  SAC ¶ 83.

85.     The presence of a final judgment is one of the elements necessary for the application of

collateral estoppel.  "The doctrine of collateral estoppel… bars only the relitigation of issues

decided by final order."  See, e.g., In re Douds, 327 B.R. 122, 124 (Bankr. W.D.N.Y. 2005)

(citing Matter of McGrath v. Gold, 36 N.Y.2d 406, 411, 369 N.Y.S.2d 62, 330 N.E.2d 35 (1975))

(finding no collateral estoppel where appeal had been filed).  See also Bilello v. JPMorgan Chase

Ret. Plan, 592 F. Supp. 2d 654, 668 (S.D.N.Y. 2009) ("the doctrine of collateral estoppel

requires entry of a final judgment before it can bar other litigation") (finding that interlocutory

order has no collateral estoppel effect); Simpson v. Alter, 78 A.D.3d 813, (App. Div. 2d Dep't.

2010) (finding issue of whether attorney breached duty to plaintiff was not "actually litigated,

---

31 Unlike Gabriele, where the consumer argued that "expend unnecessary resources" regarding immaterial issues that did not go to the merits of the collection lawsuit, in the case at bar *all* of the lost time, expenses, etc. is the result of the false lawsuit. Defendants never had standing to file suit in the name of Resurgent because of it had no standing to bring suit, and was not licensed. This case is more like the line of cases where court have held that attorneys' fees accrued in defending a time barred lawsuit are actual damages that can be recovered in a subsequent FDCPA lawsuit.  .Venes v. Professional Service Bureau, Inc., 353 N.W.2d 671 (Minn.App.1984) (attorney's fees in defending prior action allowed as actual damages);  McKnight v. Benitez, 176 F.Supp.2d 1301 (M.D.Fla.2001); see also In re Wilson, 311 B.R. 566 (D.Or. 2004), aff'd Shelton v. Wilson, 2006 WL 1737221 (9th Cir. 2006) (attorney's fees were considered damages under Oregon's collection agency statute).

squarely addressed, and specifically decided" because plaintiff's failure to appeal an adverse ruling on her motion to disqualify the attorney from representing her in the prior proceeding was reasonable in light of the fact that entire proceeding was dismissed).

86.     Defendants attempt to gloss over this obvious and fatal shortcoming in their argument by asserting vaguely that collateral estoppel applies "to the extent the state courts rendered decisions concerning any issues now being raised by Plaintiffs." (MTD p. 15). Defendants' only concrete example of a state court "decision" is the grant of the motion to amend the complaint in the Fritz Action to substitute LVNV as plaintiff. Id. Since the Fritz Action was discontinued by stipulation of the parties (SAC ¶ 67), an interlocutory order in the case can have no collateral estoppel effect.[32]

### b) Class members' claims do not involve relitigation of any issues decided in prior litigation

87.     For the reasons discussed immediately above, it is clear that collateral estoppel cannot apply at all to the claims of class members against whom no state court judgment has been entered. Class members' claims are not barred by collateral estoppel for the additional reasons that 1) decisions rendered on default have no collateral estoppel effect; 2) many of the claims raised in this suit have no relation to litigation activity or the validity of the underlying debt; and 3) FDCPA claims do not involve issues identical to debt collection cases.

88.     Defendants cannot assert collateral estoppel on the basis of default judgments in debt collection actions against class members. Under New York law, issues decided by default do not normally have collateral estoppel effect. "Because no issues are actually litigated in a proceeding that results in a default judgment, this court agrees with the 'better view' that a

---

[32] As discussed below, the fact that the motion was granted on default (SAC ¶ 62) would also prevent it from having collateral estoppel effect.

default judgment has no collateral estoppel effect." Super Star Sneakers & Sports, Inc. v. Bata Shoe Co., Inc., 508 F. Supp. 260, 262 (E.D.N.Y. 1981).  Not only are such issues not actually litigated, they are not even considered identical:

> If the issue has not been litigated, there is no identity of issues between the present action and the prior determination. An issue is not actually litigated if, for example, there has been a default, a confession of liability, a failure to place a matter in issue by proper pleading or even because of a stipulation.

Kaufman, 65 N.Y.2d at 456-57, 482 N.E.2d at 68.  See also Evans v. Ottimo, 469 F.3d 278, 282 (2d Cir. 2006); D'Arata v. New York Cent. Mut. Fire Ins. Co., 76 N.Y.2d 659, 666-67, 564 N.E.2d 634, 638 (1990).

89.     Defendants also cannot assert collateral estoppel as to claims that are not related to litigation activity by the Defendants.  Under New York Law, "the party seeking the benefit of collateral estoppel has the burden of demonstrating the identity of the issues in the present litigation and the prior determination." Kaufman v. Eli Lilly & Co., 65 N.Y.2d 449, 456, 482 N.E.2d 63, 67 (1985).  See also Evans v. Ottimo, 469 F.3d 278, 281-82 (2d Cir. 2006); In re Bressler, 387 B.R. 446, 455 (Bankr. S.D.N.Y. 2008) ("As the party seeking the benefit of collateral estoppel, Strum has the burden to demonstrate that the decisive issue was resolved in a prior action involving Bressler.")  The claims in this lawsuit include, inter alia, that Defendants failed to include required information in their initial communications with alleged debtors, made deceptive and misleading representations in communications with alleged debtors, and reported false information or information they should have known to be false to credit reporting agencies. SAC ¶12.  Defendants have failed to make even a colorable argument that claims such as these raise issues identical to the issues actually or necessarily decided in state court debt collection actions.

90.     Finally, to the extent Plaintiffs claim that Defendants' actions in preparing, filing or prosecuting debt collection actions violate the FDCPA and state law, the issues raised in those claims are also not identical to the issues decided in debt collection actions.  The FDCPA and GBL § 349 claims challenge the method of debt collection, not the validity of the underlying debt.  "Debt attachment and debt collection are matters separated by time and purpose."  Ekinici v. GNOC. Corp., 02-CV-3928 (JG), 2002 WL 31956011 (E.D.N.Y. Dec. 31, 2002) (quoting Whitaker v. Ameritech Corp., 129 F.3d 952, 958 (7th Cir. 1997)).

91.     Many courts have recognized that FDCPA claims involve distinct legal and factual issues from debt collection claims.  See, e.g., Cousins v. Duane St. Associates, 7 F. App'x 85 (2d Cir. 2001) (concluding that New York preclusion law did not bar FDCPA claims based on improper filing of summary nonpayment proceedings, even though the FDCPA claims could have been raised as a counterclaim in the state action); Schuh v. Druckman & Sinel, LLP, 602 F. Supp.2d 454 (S.D.N.Y. 2009) (FDCPA claims are independent of transaction adjudicated in state court regarding the debt); Balk v. Fererstein & Smith, LLP, 09-CV-249A, 2011 WL 1560984 (W.D.N.Y. Feb. 18, 2011) report and recommendation adopted sub nom. 2011 WL 1557948 (W.D.N.Y. Apr. 25, 2011) (finding no collateral estoppel because the issue in the FDCPA case – whether the foreclosure action was commenced and continued maliciously and to instill fear in the plaintiffs – was not identical to the issue in the state court action, where plaintiffs challenged the validity of the lien).  See also, Harris v. Jacob Marsh, LLC, 12CV356A, 2012 WL 3655357 (W.D.N.Y. July 6, 2012) report and recommendation adopted sub nom. 2012 WL 3655334 (W.D.N.Y. Aug. 23, 2012) ([debt's] validity was not material to the FDCPA claim and none of the elements of plaintiff's FDCPA's claim were necessary or relevant to defendant's debt collection counterclaim).

92.     Accordingly, the entirety of Plaintiffs' complaint rests on issues that are distinct from those involved in the state court debt collection actions such that collateral estoppel does not bar these claims.

### B.     The Noerr-Pennington doctrine is inapplicable to plaintiff's claims

83.     The United States Supreme Court has explicitly found that the FDCPA applies to litigation activity. Heintz v. Jenkins, 514 U.S. 291, 293 (1995) (applying the FDCPA prohibitions against trying to collect an unauthorized amount and against a false representation of the amount of a debt to a settlement offer letter sent in the course of litigation). Although the Heintz decision does not discuss litigation immunity, it would make no sense to hold that litigation activities are subject to the Act if they are protected by *Noerr-Pennington*.

84.     Consistently, courts explicitly reject the application of the *Noerr-Pennington* doctrine to protect litigation activity which would otherwise be prohibited by the FDCPA. Hartman v. Great Seneca Fin. Corp., 569 F.3d 606 (6th Cir. 2009). In Hartman, a debt buyer and its attorney filed collection complaints supported by documents that purported to be copies of actual account statements, but were in fact fabricated for the litigation. Id. at 608. Relying in part on Heintz, the Sixth Circuit rejected the defendants' *Noerr-Pennington* argument and concluded that "the FDCPA is intended to burden debt-collectors even when they are engaged in litigation." Id. at 615. See also Sykes v. Mel Harris & Associates, LLC, 757 F. Supp. 2d 413, 429 (S.D.N.Y. 2010) (rejecting debt buyers' assertion of the *Noerr-Pennington* doctrine as a defense in a case alleging violations of the FDCPA, RICO and GBL § 349)[33]; Basile v. Blatt, Hasenmiller,

---

[33] The Sykes court relied on a narrower argument for rejecting *Noerr-Pennington* as a defense, concluding that the alleged "sewer service" scheme was "sham litigation" not protected by the doctrine. The decision dedicates only three sentences to discussion of *Noerr-Pennington*, and neither cites nor contradicts the case law rejecting application of the doctrine to any FDCPA claim. Sykes v. Mel Harris & Associates, LLC, 757 F. Supp. 2d 413, 429 (S.D.N.Y. 2010).

Liebsker & Moore L.L.C., 632 F. Supp.2d 842, 846 (N.D. Ill. 2009); Gerber v. Citigroup, Inc., 2009 WL 248094 (E.D. Cal. Jan. 29, 2009), *report and recommendation adopted*, 2009 WL 2058576 (E.D. Cal. July 14, 2009); Sial v. Unifund CCR Partners, 2008 WL 4079281, at *4 (S.D. Cal. Aug. 28, 2008); Ison v. Javitch, Block & Rathbone, 2007 WL 2769674, at *8 (S.D. Ohio Sept. 18, 2007).

85.     Similarly, courts have rejected application of *Noerr-Pennington* to claims brought under GBL § 349.  Sykes, supra; Calabrese v. CSC Holdings, Inc., 2004 WL 3186787 (E.D.N.Y. July 19, 2004).  As this court noted in Calabrese, "'[i]t is well settled that First Amendment rights are not immunized from regulation when they are used as an integral part of conduct which violates a valid statute.'"  Calabrese, 2004 WL 3186787, at *2 (quoting California Motor Transp. Co. v. Trucking Unlimited, 404 U.S. 508, 514 (1972)).  GBL § 349 is a valid statute that applies to debt collection activity, including litigation activity; Sykes, cited above, involved claims that a number of interrelated debt buying companies and a law firm (Mel Harris, the defendant here) improperly commenced debt collection lawsuits, thereby violating GBL § 349 and other laws. Defendants' filing and prosecution of collection actions (the only behavior they assert would be protected by the *Noerr-Pennington* doctrine in any event, MTD p. 17) are not immunized.

86.     Defendants fail to cite a single case in which the *Noerr-Pennington* doctrine has been applied to bar FDCPA claims.  Furthermore, they cite only one case in which *Noerr-Pennington* was applied to a claim under the GBL, an unreported decision of limited precedential value; not only did the court dismiss the relevant counterclaim for the independent reason that it failed to state a claim, but the party asserting the counterclaim *conceded* the *Noerr-Pennington* issue, such

---

The same "sham litigation" exception would prevent dismissal of Plaintiffs' claims here, even if the Court concluded that *Noerr-Pennington* was otherwise applicable.  Sham litigation includes "the pursuit of a pattern of baseless, repetitive claims" such as Resurgent's repeated filing of lawsuits which it had not standing to file.  Id.

that the court never discussed whether its application was appropriate.  DirecTV, Inc. v. Rowland, 04-CV-297S, 2005 WL 189722 (W.D.N.Y. Jan. 22, 2005).  Defendants' unsupported argument must be rejected.

C.   <strong>The court should not abstain from this case.</strong>

87.    Abstention is "an extraordinary and narrow exception" to "the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them." Colorado River Water Conservation Dist. v. U. S., 424 U.S. 800, 813, 817 (1976).  See also Woodford v. Cmty. Action Agency of Greene County, Inc., 239 F.3d 517, 522 (2d Cir. 2001).  In Woodford, the 2nd Circuit identified six factors that should be considered when there is a concurrent action in state court,[34] cautioning that "the balance is heavily weighted in favor of the exercise of jurisdiction" such that "the facial neutrality of a factor is a basis for retaining jurisdiction, not for yielding it." Woodford at 522.  In this case, only one factor (the order in which the actions were filed) even arguably weighs in favor of abstention.  Therefore, Defendants' abstention argument must be rejected.

88.    A debt collection action in New York state court is not a suit in rem or quasi in rem; notwithstanding Defendants' bare assertion to the contrary (MTD p. 16), there is no res over

---

[34] Abstention is not warranted at all when there is no pending, concurrent litigation in the state court. "[T]he finality of proceedings at the state court level… categorically obviates the need for abstention." Amerson v. Chase Home Fin. LLC, No. 11-CV-01041-WJM-MEH, 2012 WL 1686168 (D. Colo. May 7, 2012).  Thus, abstention cannot apply at all to the claims of Plaintiff Fritz or any class member against whom suit has merely been threatened, or a final judgment has entered.
Acknowledging this difficulty, Defendants' suggest in a footnote that the claims of such individuals would be barred by the Rooker-Feldman doctrine.  This argument fails.  This case is analogous to Mascoll v. Strumpf, 05-CV-667 (SLT), 2006 WL 2795175 (E.D.N.Y. Sept. 26, 2006).  In Mascoll, the federal court plaintiff asserted claims under the FDCPA and GBL § 349 against a creditor who secured a default judgment against her in a foreclosure action. After careful analysis, the court in Mascoll concluded that Rooker-Feldman did not apply because the plaintiff did not seek an order vacating the state court judgment.  Indeed, the federal court action for damages "would continue even if the state-court judgment were vacated." Mascoll, 2006 WL 2795175, *8.  This conclusion reflects the fact that the Rooker-Feldman doctrine is "narrow" and "confined to cases brought by state-court losers complaining of injuries caused by state-court judgments." Exxon Mobil Corp. v. Arabia, Inc., 544 U.S. 280, 284 (2005) (emphasis added).  As in Mascoll, Plaintiffs in this case do not assert that their injuries are caused by state court judgments, but rather by the actions of the Defendants themselves.

41

which the state courts have assumed jurisdiction.  See United States v. Bank of New York & Trust Co., 296 U.S. 463 (1936) (comparing a suit "merely to establish a debt" with a suit to obtain possession of funds "actually seized under judicial process" in the state court; the federal court lacks jurisdiction only in the latter instance).  "[T]he absence of a res points toward exercise of federal jurisdiction." Vill. of Westfield v. Welch's, 170 F.3d 116, 122 (2d Cir. 1999) (internal quotation omitted).  The second factor also clearly points toward the exercise of jurisdiction; Defendants do not make any claim that the federal forum is inconvenient for them, and clearly it is not inconvenient for Plaintiffs, since Plaintiffs chose to bring this case in federal court.

89.    The remaining factors all concern whether the state and federal actions are "parallel." "[A]a finding that the concurrent proceedings are 'parallel' is a necessary prerequisite to abstention under Colorado River." Dittmer v. County of Suffolk, 146 F.3d 113, 117 (2d Cir. 1998). Proceedings are not parallel, and therefore do not justify abstention, when the two cases seek different remedies or the cases litigate different issues between slightly different parties. See Balsly v. West Michigan Debt Collections, Inc., 2012 WL 628490 *11 (E.D. Va. Feb. 27, 2012).

90.    As discussed elsewhere in this brief, Plaintiffs are not challenging the validity of the underlying debts in this action.  Rather, Plaintiffs assert that the Defendants used unfair, deceptive and misleading means to attempt to collect the debts, resulting in confusion, increased litigation costs, damage to credit and other harms to Plaintiffs and class members.  An FDCPA claim and a state claim on the underlying debt "raise different legal and factual issues, governed by different bodies of law." Agan v. Katzman & Korr, P.A., 2004 WL 555257 (S.D. Fla. Mar. 16, 2004) (rejecting abstention argument in an FDCPA case).

91.    Furthermore, the suits are not parallel because they involve dissimilar parties. See Day v.

Union Mines, Inc., 862 F.2d 652 (7th Cir. 1988); Balsly v. West Michigan Debt Collections, Inc., 2012 WL 628490 (E.D. Va. Feb. 27, 2012). Here, Resurgent or LVNV, although generally not both, are parties to the state court proceedings against each Plaintiff and class member, but the law firm for Resurgent and the lawyers for the firm are not parties – they are counsel of record in the state court actions. Plaintiffs could not assert their claims against the law firm or the attorneys in the state court proceedings without creating a conflict of interest that might disqualify them as counsel. "Divergent issues of this type tend to suggest that, although some of the parties of are the same, the interests of those parties in the two different cases are not parallel." Balsly, 2012 WL 628490 at *10 (emphasis in original); See also Acosta v. James A. Gustino, P.A., 2012 WL 2017337 (11th Cir. June 6, 2012) (holding that the fact that the inclusion of the attorneys for the creditor as defendants in the federal action – when they were not parties to the state action – made the two actions not parallel).

92.     In short, all the remaining Woodford factors weigh in favor of federal jurisdiction. Because Plaintiffs and class members have not raised counterclaims in the state court actions based on debt collection tactics, litigation will not be piecemeal.35 Because Plaintiffs' claims for improper debt collection tactics arise primarily under the FDCPA, federal law will provide the rule for decision. Furthermore, because of the different parties in the state and federal actions, the state procedures are not adequate to protect Plaintiffs' rights.[36] Abstention is not appropriate in this case.

### D.     Prayer

---

35 The possibility that class members might raise such counterclaims in future is not a justification for abstention; abstention is only appropriate "when the main issue in the case is the subject of already pending litigation." Suffolk Fed. Credit Union v. Cumis Ins. Soc., Inc., 829 F. Supp. 2d 82, 86 (E.D.N.Y. 2010) (emphasis added, internal quotations omitted).

36 The state procedures are inadequate in another way, as well; were the Plaintiffs to assert class-action counterclaims in state court, those claims could not be adjudicated in New York City Civil Court and the case would require removal to New York State Supreme Court, creating delay and a greater risk of piecemeal litigation.

93.    WHEREFORE, Plaintiffs pray for the Court to Deny Defendants' Motions to Dismiss.

Dated:  Brooklyn, New York
         December 3, 2012

Respectfully submitted,
/s/
Ahmad Keshavarz
One of Plaintiffs' Attorneys
The Law Office of Ahmad Keshavarz
16 Court St., 26th Floor
Brooklyn, NY 11241-1026
Phone: (718) 522-7900
Email: ahmad@NewYorkConsumerAttorney.com

Co-counsel for Plaintiff
Dan Blinn
Consumer Law Group
35 Cold Spring Rd, Suite 512
Rocky Hill, CT  06067
Phone: (860) 571-0408, x101

Co-counsel for Plaintiff
Matthew Schedler, Of Counsel (MS-3774)
Kathleen A. Masters, Executive Director
CAMBA Legal Services, Inc.
885 Flatbush Ave.  2nd Fl.
Brooklyn, NY  11226
Phone: (718) 940-6311

NATIONAL CONSUMER LAW CENTER, INC.

Charles M. Delbaum, Esq.  cdelbaum@nclc.org
Arielle Cohen, Esq. ariellecohen@nclc.org
7 Winthrop Square, 4th floor
Boston, MA 02110
617-542-8010