UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------x
GISELLE FRITZ f/k/a GISELLE
CARTER, EVAN DAVIS, JASON
SPIEGEL-GROTE, and PATRICIA
CASERTANO, on behalf of themselves
and all others similarly situated,

                    Plaintiffs,

      -against-

RESURGENT CAPITAL SERVICES, LP;
LVNV FUNDING, LLC; ALEGIS
GROUP, LLC; MEL S. HARRIS AND
ASSOCIATES, LLC; DAVID
WALDMAN; and RESURGENT
CAPITAL SERVICES, LLC,

                  Defendants.
-----------------------------------------------------x

**MEMORANDUM AND ORDER**
Case No. 11-CV-3300 (FB) (VVP)

*Appearances:*
*For Plaintiffs:*
AHMAD KESHAVARZ, ESQ.
The Law Office of Ahmad Keshavarz
16 Court Street, 26th Floor
Brooklyn, NY 11241

*For Defendants:*
BRETT A. SCHER , ESQ.
Kaufman Dolowich Voluck & Gonzo LLP
135 Crossways Park Drive, Suite 201
Woodbury, NY 11797

**BLOCK, Senior District Judge:**

        Plaintiffs assert claims under the Fair Debt Collection Practices Act

("FDCPA"), 15 U.S.C. §§ 1692-1692p, and New York General Business Law ("GBL") § 349.

Defendants move to dismiss the Second Amended Complaint ("SAC") pursuant to Federal

Rule of Civil Procedure 12(b)(6).

        Because defendants urge numerous grounds for dismissal, it is necessary to

structure the Court's analysis.  Part I presents the allegations of the SAC.  Part II addresses

plaintiffs' claims under the FDCPA, including any defenses particular to those claims. Part III addresses plaintiffs' claims under GBL § 349. Part IV addresses defenses common to all of plaintiffs' claims. Part V addresses the liability of defendants LVNV Funding, LLC ("LVNV"), and Alegis Group, LLC ("Alegis").[1] For the reasons that follow, defendants' motion to dismiss is granted in part and denied in part.

## I.  ALLEGATIONS

The following facts are taken from the SAC. For present purposes, they are taken as true, with all inferences drawn in plaintiffs' favor. *See Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 358 (2d Cir. 2013).

LVNV purchases hundreds of thousands of dollars in consumer debt from creditors who have written off the accounts. It outsources efforts to collect those debts to defendant Resurgent Capital Services, LP ("Resurgent LP"). Alegis is the general partner of Resurgent LP. Defendant Resurgent Capital Services, LLC ("Resurgent LLC") is an "entity related to" Resurgent LP. SAC ¶ 24.

The SAC alleges that LVNV, Resurgent LP and Resurgent LLC are "engaged in a joint venture to collect debts owned by LVNV." *Id.* In furtherance of that venture, Resurgent LP retains various law firms to handle the legal aspects of collection. Defendant Mel Harris and Associates, LLC ("the Harris Firm"), is one such firm. Defendant David Waldman is an attorney with the Harris Firm.

---

[1]Plaintiffs seek to represent a class. Since, however, they have not yet moved for certification, this memorandum and order addresses only the claims of the named plaintiffs.

In 2010, the named plaintiffs were separately sued in state court by Resurgent LLC.  In each suit, Resurgent LLC sought to collect a consumer debt; it alleged that it was the "purchaser and assignee" of the debt at issue, and that it "own[ed] and retain[ed] all beneficial rights and interests therein."  SAC, Exs. D, G, P, Q.  Resurgent LLC further alleged that it was a licensed debt-collection agency and held license number 1326179 from the New York City Department of Consumer Affairs.  The collection complaints were signed by Waldman on behalf of the Harris Firm.

In fact, the debts were held by LVNV.  In addition, the license number listed in the complaints belonged to LVNV, and not to Resurgent LLC.  The complaints made no mention of LVNV.

The SAC also contains allegations unique to plaintiff Giselle Fritz.  On May 27, 2010, the Harris Firm sent Fritz a letter demanding payment on behalf of its client, which it identified as Resurgent LLC.  The letter made no mention of LVNV.  In addition, Resurgent LP reported to various credit agencies, on behalf of LVNV, that Fritz owed $2,838, which sum included $160 in court costs.  At the time, the collection action against Fritz was pending; it was discontinued without prejudice on July 6, 2011.

## II.  FDCPA CLAIMS

Plaintiffs assert that defendants' actions violated the FDCPA in three ways:

A. by misrepresenting Resurgent LLC as the owner of the debts and as a licensed debt collector in the collection complaints;

B. by including court costs in the amount of Fritz's debt reported to credit reporting agencies; and

C. by failing to name LVNV as the creditor in the May 27, 2010 collection letter

to Fritz.

## A.  Misrepresentations in Collection Complaints

The FDCPA prohibits the use of "any false, deceptive, or misleading representation or means in connection with the collection of any debt."  15 U.S.C. § 1692e.  The statute then lists a series of specific prohibited acts.  *See id.* § 1692e(1-16).  The list is not exhaustive, however, and "a debt collection practice can be a 'false, deceptive, or misleading' practice in violation of § 1692e even if it does not fall within any of the subsections of § 1692e."  *Clomon v. Jackson*, 988 F.2d 1314, 1318 (2d Cir. 1993).

The collection complaints represented that Resurgent LLC owned the debts, and that it held a debt-collection license from the New York City Department of Consumer Affairs. Defendants do not dispute that those representations were false.  Instead, they argue (1) that § 1692e does not apply to litigation activity, and (2) that the misrepresentations were not material.

## 1.  *Litigation Activity*

In *Heintz v. Jenkins*, 514 U.S. 291 (1995), the Supreme Court held that the FDCPA "applies to attorneys who regularly engage in consumer-debt-collection activity, even when that activity consists of litigation." *Id.* at 299 (internal quotation marks omitted). Several circuit courts have concluded that the broader implication of *Heintz* is that the FDCPA applies to all litigation activities.  *See Sayyed v. Wolpoff & Abramson,* 485 F.3d 226, 232 (4th Cir. 2007) (collecting cases).  And in *Goldman v. Cohen*, 445 F.3d 152 (2d Cir.2006), the Second Circuit cited *Heintz* in support of its holding that a pleading was an "initial communication" which, under the FDCPA, must include certain disclosures. *See id.* at 156.

4

Congress legislatively overruled *Cohen* by amending the FDCPA section dealing with initial communications to exclude "a formal pleading in a civil action." *See* Pub. L. 109-351, § 809, 120 Stat. 2006 (2006) (amending 15 U.S.C. § 1692g). That amendment demonstrates that Congress knows how to create an exemption for litigation activity. Yet it created no analogous exception for § 1692e's general prohibition on false statements. The Supreme Court recently repeated the longstanding rule that "[w]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Sebellius v. Cloer*, 133 S. Ct. 1886, 1894 (2013) (quoting *Bates v. United States*, 522 U.S. 23, 29–30 (1997)).

Defendants cite *Simmons v. Roundup Funding, LLC*, 622 F.3d 93 (2d Cir. 2010), and *McAfee v. Law Firm of Forster & Garbus*, 2008 WL 3876079 (E.D.N.Y. Aug. 18, 2008), in support of the contrary proposition that the FDCPA does not apply to litigation activities. The import of those cases, however, is not as broad as defendants make it out to be. *Simmons* held that a proof of claim in a bankruptcy proceeding was not subject to § 1692e because "[t]here is no need to protect debtors who are already under the protection of the bankruptcy court." 622 F.3d at 96. In *McAfee*, the claims related "solely to Defendants' alleged improprieties in prosecuting a court action against him in state court and his criticisms of the state-court system," 2008 WL 3876079, at *5; Judge Garaufis dismissed them because the plaintiff had offered neither allegations nor evidence "tending to establish misrepresentation." *Id.*

5

## 2. *Materiality*

Many courts have read a materiality requirement into § 1692e.  *See Warren v. Sessoms & Rogers, P.A.*, 676 F.3d 365, 374 (4th Cir. 2012) (collecting cases).  The Second Circuit has not made an analogous pronouncement, but it did cite *Warren* and similar cases with apparent approval in a recent summary order.  *See Gabriele v. Am. Home Mortg. Servicing, Inc.*, 503 F. App'x 89, 94 (2d Cir. Nov. 27, 2012) ("Although Congress did not expressly require that any violation of § 1692e be material, courts have generally held that violations grounded in 'false representations' must rest on material misrepresentations."). While *Gabriele* is not binding precedent, the Court agrees that only material misrepresentations are actionable under the FDCPA.

*Gabriele* also persuasively explains what makes a misrepresentation material: "Our case law demonstrates that communications and practices that could mislead a putative-debtor as to the nature and legal status of the underlying debt, or that could impede a consumer's ability to respond to or dispute collection, violate the FDCPA."  *Id.* That case law also establishes that compliance with the FDCPA is assessed "from the perspective of the 'least sophisticated consumer.'" *Jacobsen v. Healthcare Fin. Servs., Inc.*, 516 F.3d 85, 90 (2d Cir. 2008) (quoting *Clomon*, 988 F.2d at 1318).

Applying those standards, the Court concludes that a false representation of the owner of a debt could easily mislead the least sophisticated consumer as to the nature and legal status of the debt.  It could, moreover, impede the consumer's ability to respond. As Judge Irizarry reasoned, "[t]he entity to which a debtor owes money potentially affects the debtor in the most basic ways, such as what the debtor should write after 'pay to the

order of' on the payment check to ensure that the debt is satisfied." *Eun Joo Lee v. Forster & Garbus LLP*, ___ F. Supp. 2d ___, 2013 WL 776740, at *3 (E.D.N.Y. Mar. 1, 2013). In other words, one possible response to a collection action would be to voluntarily pay the debt. A consumer—even a sophisticated one—might reasonably believe that paying the entity bringing suit would extinguish the debt. Yet because of the misrepresentation as to the ownership of the debt, paying Resurgent LLC would have left the debtor vulnerable to a suit by the true owner, LVNV. Indeed, plaintiff Patricia Casertano alleges that she was sued by LVNV while the suit by Resurgent LLC was pending.[2]

Defendants point out that the collection complaints clearly and correctly listed the account numbers and original creditors for the debts. While such information would certainly prevent even an unsophisticated consumer from being confused as to *what* debt was at issue, it would have shed no light on *whom* to pay to discharge it.

The Court likewise concludes that the misrepresentations that Resurgent LLC was a licensed debt collector were material. Defendants do not dispute that Resurgent LLC was required to be licensed before taking any action to collect debts in New York City. *See* N.Y.C. Admin. Code §§ 20-490 ("It shall be unlawful for any person to act as a debt collection agency without first having obtained a license in accordance with the provisions of this subchapter[.]"), 20-489 (defining "debt collection agency"). Lack of such a license precludes recovery on collection actions. *See* N.Y.C.P.L.R. § 3015(e) ("Where the plaintiff's

---

[2]It is immaterial that not all of the named plaintiffs were subjected to competing lawsuits: "[I]t is not necessary for a plaintiff to show that she herself was confused by the communication she received; it is sufficient for a plaintiff to demonstrate that the least sophisticated consumer would be confused." *Jacobsen*, 516 F.3d at 91.

cause of action against a consumer arises from the plaintiff's conduct of a business which is required by state or local law to be licensed by the department of consumer affairs of the city of New York . . . the complaint shall allege, as part of the cause of action, that plaintiff was duly licensed at the time of services rendered and shall contain the name and number, if any, of such license and the governmental agency which issued such license."). The false representation that Resurgent LLC held a debt-collection license could easily have led an unsophisticated consumer to forgo a valid defense.

The Court is aware that some courts in this and other circuits have reached a different conclusion as to the materiality of the creditor's identity. *See, e.g., Lane v. Fein*, 767 F. Supp. 2d 382, 389 (E.D.N.Y. 2011); *Klein v. Solomon & Solomon, P.C.*, 2011 WL 5354250, at *2 (D. Conn. Oct. 28, 2011); *McLain v. Gordon*, 2010 WL 3340528, at *7 (W.D. Wash. Aug. 24, 2010). In addition, many courts have concluded that lack of a debt-collection license is not a *per se* violation of the FDCPA. *See Nero v. Law Office of Sam Streeter, P.L.L.C.*, 655 F. Supp. 2d 200, 207 (E.D.N.Y. 2009). Perhaps the Second Circuit will eventually resolve these debates. Until then, the Court is persuaded that misrepresentations that a plaintiff in a collection action owns the debt and is licensed to collect it are both material.

**B. Misrepresentation of Fritz's Debt to Credit Reporting Agencies**

Under New York law, a party is not liable for court costs unless and until there is a judgment in favor of the opposing party. *See* N.Y.C.P.L.R. § 8101 ("The party in whose favor a judgment is entered is entitled to costs in the action . . . ."). Since the collection action against Fritz never resulted in a judgment, she was not liable for court costs. By including court costs in the debt it reported to credit reporting agencies,

8

Resurgent LP misrepresented the amount of the debt.  The FDCPA specifically prohibits such misrepresentations.  *See* 15 U.S.C. § 1692e(2)(A) (prohibiting the false representation of "the character, amount, or legal status of any debt").  It also specifically prohibits the reporting of "credit information which is known or which should be known to be false." *Id.* § 1692e(8).

Defendants' only response to this claim is that it should have been made under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681-1681x.  It is true that the FCRA makes it unlawful for any person to "furnish any information relating to a consumer to any consumer reporting agency if the person knows or has reasonable cause to believe that the information is inaccurate," *id.* § 1681s-2(a)(1)(A), but nothing in the statute or the case law suggests that the FCRA provides the exclusive remedy for misrepresentations to a credit reporting agency.[3]  As explained above, such misrepresentations fall comfortably within the plain language of the FDCPA.  *Accord Davis v. Trans Union,* LLC, 526 F. Supp. 2d 577, 586-87 (W.D.N.C. 2007); *Akalwadi v. Risk Mgmt. Alternatives, Inc.*, 336 F. Supp. 2d 492, 503 (D. Md. 2004); *Finnegan v. Univ. of Rochester Med. Ctr.*, 21 F. Supp. 2d 223, 229 (W.D.N.Y. 1998).

## C.  Misrepresentation in May 27, 2010 Letter to Fritz

The May 27, 2010 letter from the Harris Firm to Fritz misidentified Resurgent LLC as the holder of her debt.  As noted, the FDCPA addresses initial communications to

---

[3]Indeed, the consensus is that § 1681s-2(a)(1)(A) does not even give rise to a private cause of action.  *See, e.g., Trikas v. Universal Card Servs. Corp.*, 351 F. Supp. 2d 37, 44 (E.D.N.Y. 2005).

debtors; it specifically requires that such communications contain "the name of the creditor to whom the debt is owed." 15 U.S.C. §1692g(a)(2). However, FDCPA claims must be brought within one year of the violation. *See* 15 U.S.C. § 1692k(d). Since the original complaint was not filed until July 8, 2011, any claim based on the May 27, 2010 letter is time-barred.[4]

Fritz urges the Court to apply the discovery rule to FDCPA claims. *See Magnum v. Action Collection Serv., Inc.*, 575 F.3d 935, 940 (9th Cir. 2009) ("[T]he general federal rule is that a limitations period begins to run when the plaintiff knows or has reason to know of the injury which is the basis of the action." (internal quotation marks omitted)). Alternatively, she argues that the statute of limitations should be equitably tolled because the misidentification of Fritz's creditor effectively prevented her from recognizing that she had an FDCPA claim. *See Somin v. Total Cmty. Mgmt. Corp.*, 494 F. Supp. 2d 153, 158 (E.D.N.Y. 2007) ("As with any a statute of limitations, the FDCPA is subject to equitable tolling in appropriate circumstances.").

Both doctrines require the exercise of due diligence. *See Guilbert v. Gardner*, 480 F.3d 140, 149 (2d Cir. 2007) ("[Under the discovery rule,] a plaintiff's cause of action accrues when he discovers, or with due diligence should have discovered, the injury that is the basis of the litigation." (internal quotation marks omitted)); *Johnson v. Nyack Hosp.*, 86 F.3d 8, 12 (2d Cir. 1996) ("Equitable tolling requires a party to pass with reasonable

---

[4]Defendants do not dispute that the other FDCPA claims are timely. Nor do they argue that *any* of the GBL § 349 claims—including the claim based on the May 27, 2010 letter—are barred by the applicable three-year statute of limitations.

diligence through the period it seeks to have tolled."). The Court agrees with defendants that Fritz cannot demonstrate that she exercised due diligence in discovering the facts concerning her claim. She does not dispute that she received the letter, which expressly advised her of her right to seek verification of the debt and to dispute its validity. Yet she does not allege that she sought clarification or took any action to satisfy the due diligence requirement. This deficiency is fatal. *See Derisme v. Hunt Leibert Jacobson P.C.*, 880 F. Supp. 2d 339, 356-57 (D. Conn. 2012) ("The fact that the Plaintiff was unaware that she had a potential cause of action . . . is not the type of extraordinary circumstances that would warrant the application of equitable tolling."); *Wade v. Rosenthal, Stein & Assocs., LLC*, 2012 WL 3764291, at *3 (E.D.N.Y. Aug. 29, 2012) (refusing to apply equitable tolling because plaintiff had not pleaded "any facts that he conducted any efforts whatsoever to discover whether the letters violated the FDCPA").[5]

**D.  Summary**

The allegations regarding the misrepresentations of Resurgent LLC's ownership of the debt, its status as a licensed debt collector, and the amount of Fritz's debt state plausible claims under the FDCPA. The allegation that the May 27, 2010 letter to Fritz failed to identify the correct creditor also states a plausible claim, but is time-barred.

---

[5]Fritz does not seek leave to amend. In any event, the Court takes her failure to challenge defendants' assertion that she took no action after receiving the letter to mean that she could not, in good faith, allege the necessary due diligence.

### III.  SECTION 349 CLAIMS[6]

GBL § 349 prohibits all "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state."  GBL § 349(a) "To state a claim under § 349, a plaintiff must allege: (1) the act or practice was consumer-oriented; (2) the act or practice was misleading in a material respect; and (3) the plaintiff was injured as a result." *Spagnola v. Chubb Corp.*, 574 F.3d 64, 74 (2d Cir. 2009). Defendants argue that plaintiffs have not adequately alleged any of the three elements.

### A.  Consumer-Oriented Conduct

To satisfy the consumer-oriented conduct element, plaintiffs must establish that defendants' "acts or practices have a broader impact on consumers at large." *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*, 85 N.Y.2d 20, 25 (1995).  "Private contract disputes, unique to the parties, [do] not fall within the ambit of the statute."  *Id.*

While plaintiffs allege that they are particular victims of defendants' debt-collection practices, their claim is not unique to them.  Rather, the crux of their claim is that those practices were a normal part of defendants' business, which involved hundreds of thousands of dollars in consumer debt.  The Court concludes that the allegedly deceptive practices have a broad impact on consumers at large. *Cf. Rozier v. Fin. Recovery Sys.*, 2011 WL 2295116, at *5 (E.D.N.Y. June 7, 2011) (holding that use of form collection letter was consumer-oriented conduct).

---

[6]Since, with one exception, the FDCPA claims survive, the Court exercises supplemental jurisdiction over the § 349 claims.

## B.  Materially Deceptive or Misleading Conduct

The second element requires plaintiffs to allege representations or omissions that are "likely to mislead a reasonable consumer acting reasonably under the circumstances." *Oswego Laborers*, 85 N.Y.2d at 25.  This is a more stringent standard than the "least sophisticated consumer" standard applicable to FDCPA claims.  *See Rozier*, 2011 WL 2295116, at *5.  Like the FDCPA, however, GBL § 349 does not require a plaintiff to show that he or she relied on the deception. *See Stutman v. Chemical Bank*, 95 N.Y.2d 24, 29 (2000).  For the reasons set forth in Part II, the Court concludes that defendants' conduct would mislead a reasonable consumer as well as the least sophisticated consumer.

## C.  Damages

Although plaintiffs must allege an actual injury, it need not be "pecuniary harm." *Stutman*, 95 N.Y.2d at 29.  Thus, it is of no consequence that plaintiffs have not alleged that defendants' deceptive conduct resulted in judgments against them.

Plaintiffs' alleged damages include "time spent and costs incurred by consumers to defend against meritless collection lawsuits that should never have been filed and should never have been prosecuted." SAC ¶ 13. Such injuries satisfy the third element of a § 349 claim.  *See Willner v. Allstate Ins. Co.*, 893 N.Y.S.2d 208, 218 (2d Dep't 2010) ("The plaintiffs alleged that they were forced to pay for an attorney, and thus adequately pleaded damages under General Business Law § 349.").

## IV.  DEFENSES

Defendants argue that plaintiffs' claims must be dismissed based on collateral estoppel, abstention, and the *Noerr-Pennington* doctrine.[7]  The Court disagrees.

## A.  Collateral Estoppel

"[A] federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984).  In New York, as elsewhere, only *judgments* have preclusive effect.  *See Peterson v. Forkey*, 376 N.Y.S.2d 560, 561 (1st Dep't 1975) ("Both the doctrines of [r]es judicata and collateral estoppel have as their prerequisites the entry of a judgment.").  Since defendants have not demonstrated that any of the collection actions resulted in a judgment, their invocation of collateral estoppel is puzzling.

In any event, collateral estoppel also requires that "the issue in the second action [be] identical to an issue which was raised, necessarily decided and material in the first action." *Parker v. Blauvelt Volunteer Fire Co.*, 93 N.Y.2d 343, 349 (1999).  Plaintiffs—as defendants in the collection actions—did not raise the FDCPA or § 349, either as defenses to collection or as counterclaims.  There is, moreover, no conceptual reason for them to have done so.  Such claims challenge the method of debt collection, not the underlying debt.  *See Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 341 (7th Cir. 1997) ("The statute is designed to protect consumers from unscrupulous collectors, regardless of the validity of

_____

[7]Although defendants address these defenses in the context of the FDCPA claims, they are equally applicable to the § 349 claims.

the debt.").  Thus, an adjudication that plaintiffs are indebted to defendants would not preclude plaintiffs from claiming that defendants violated the FDCPA or GBL § 349.  *Accord Balk v. Fererstein & Smith, LLP*, 2011 WL 1557948, at *1 (W.D.N.Y. Apr. 25, 2011) ("[C]ollateral estoppel does not apply here because FDCPA violations can be separated from underlying state litigation.").

## B.  Abstention

Abstention is "an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it."  *County of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 188-89 (1959).  Accordingly, it is properly invoked only in "exceptional circumstances."  *Id.* at 189.  That said, abstention may be appropriate when parallel state-court litigation might result in "comprehensive disposition of litigation."  *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976) (internal quotation marks omitted).

"[A] finding that the concurrent proceedings are 'parallel' is a necessary prerequisite to abstention under *Colorado River*."  *Dittmer v. County of Suffolk*, 146 F.3d 113, 118 (2d Cir. 1998).  The Court concludes that this action is not "parallel" to the state-court collection actions for the same reason that collateral estoppel does not apply: This action concerns defendants' debt-collection methods, while the collection actions involve the validity of the underlying debts.  Since the collection actions will not resolve plaintiffs' claims, abstention would not be appropriate.

## C.  *Noerr-Pennington*

Defendants argue that holding them liable for pursuing collection actions

15

would violate their First Amendment right to "petition the Government for redress of grievances." U.S. Const. Amend. 1.  That right is protected by the *Noerr–Pennington* doctrine, which "generally immunizes from liability a party's commencement of a prior court proceeding." *T.F.T.F. Capital Corp. v. Marcus Dairy, Inc.*, 312 F.3d 90, 93 (2d Cir. 2002) (internal quotation marks omitted)).  "The doctrine originated in the antitrust area, but it has been extended to provide immunity from liability for bringing other suits." *Hirschfeld v. Spanakos*, 104 F.3d 16, 19 (2d Cir. 1997).

As noted, many circuit courts have held that the FDCPA applies to litigation activities.  *See supra* Part II.A.1.  Only two, however, have specifically addressed the implications of the *Noerr-Pennington* doctrine.  In *Hartman v. Great Seneca Fin. Corp.*, 569 F.3d 606 (6th Cir. 2009), the Sixth Circuit held that the *Noerr-Pennington* doctrine did not provide immunity from an FDCPA claim based on intentional misrepresentations.  *See id.* at 616.  It reasoned that "there is no constitutional value in false statements of fact" because "[n]either the intentional lie nor the careless error materially advances society's interest in uninhibited, robust, and wide-open debate on public issues."  *Id.* (quoting *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 340 (1974)).  It recognized that *Heintz* did not address *Noerr-Pennington*, but noted that application of the doctrine would negate the Supreme Court's "detailed analysis and clear conclusion" in that case.  *Id.*

The Ninth Circuit reached a superficially contrary conclusion in *Satre v. Wells Fargo Bank, NA*, 507 F. App'x 655 (9th Cir. Jan. 2, 2013), holding that *Noerr–Pennington* immunized an attorney from FDCPA liability.  *See id.* at 655.  The basis for that holding, however, was that the complaint "failed to establish that [the attorney], who was defending

16

his client from litigation initiated by the Satres, was a 'debt collector.'" *Id*.  Though *Satre* did

not cite *Heintz*, it is entirely consistent with the Supreme Court's holding that the FDCPA

applies to the litigation activities of those who "regularly engage in

consumer-debt-collection activity."  514 U.S. at 299.

   The Court agrees with and adopts the Sixth Circuit's reasoning that *Noerr-*

*Pennington* does not provide immunity for intentional misrepresentations made in

litigation.  *See also California Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 513 (1972)

("Misrepresentations, condoned in the political arena, are not immunized when used in the

adjudicatory process.").  Although the FDCPA is often described as a "strict liability

statute," *see, e.g.*, *Bentley v. Great Lakes Collection Bureau*, 6 F.3d 60, 63 (2d Cir. 1993), a

defendant may escape liability by proving "by a preponderance of evidence that the

violation was not intentional and resulted from a bona fide error notwithstanding the

maintenance of procedures reasonably adapted to avoid any such error."  15 U.S.C. §

1692k(c).  Thus, the statute respects whatever constitutional protections unintentional

misrepresentations enjoy.[8]

---

[8]Plaintiffs argue that any claim by the Harris Firm and Waldman that the misrepresentations in the pleadings and letters they signed were unintentional would make them liable under § 1692e(3), which prohibits "[t]he false representation or implication . . . that any communication is from an attorney."  The Second Circuit has held that a communication that is from an actual attorney can nevertheless violate § 1692e(3) if the attorney fails to conduct a meaningful review of the communication. *See Clomon*, 988 F.2d at 1321 ("[T]he use of an attorney's signature implies — at least in the absence of language to the contrary — that the attorney signing the letter formed an opinion about how to manage the case of the debtor to whom the letter was sent.").
 None of the defendants has invoked § 1692k(c) as a ground for dismissal. Accordingly, the Court declines to address the viability of plaintiffs' alternative theory of liability at this time.

By contrast, liability under GBL § 349 does not depend on the defendant's intent. *See Oswego Laborers*, 85 N.Y.2d at 26 ("[I]t is not necessary under the statute that a plaintiff establish the defendant's intent to defraud or mislead."). Nevertheless, the Court is not persuaded that *Noerr-Pennington* immunizes defendants from such liability because the doctrine excepts "sham" litigation from its protection. *See T.F.T.F. Capital*, 312 F. 3d at 93. The exception applies where "the litigation in question is: (i) 'objectively baseless,' and (ii) 'an attempt to interfere directly with the business relationships of a competitor through the use of the governmental process—as opposed to the outcome of that process—as an anticompetitive weapon.'" *Primetime 24 Joint Venture v. National Broad. Co.*, 219 F.3d 92, 100-01 (2d Cir. 2000) (quoting *Professional Real Estate Investors, Inc. v. Columbia Pictures Indus.*, 508 U.S. 49, 51 (1993)). The phrasing of the second factor makes it irrelevant outside the antitrust context. *See DirecTV, Inc. v. Rowland*, 2005 WL 189722, at *4 (W.D.N.Y. Jan. 22, 2005). A collection action by an entity that does not own the underlying debt is certainly "objectively baseless."

## V.  LIABILITY OF LVNV AND ALEGIS

Defendants LVNV and Alegis contend that the claims against them must be dismissed because the SAC fails to allege that they took any wrongful actions. The Court disagrees as to both defendants.

## A.  LVNV

No Second Circuit case addresses whether and to what extent a defendant may be held vicariously liable under the FDCPA. Out-of-circuit cases establish that "an entity which itself meets the definition of 'debt collector' may be held vicariously liable for

unlawful collection activities carried out by another on its behalf," *Police v. National Tax Funding, L.P.*, 225 F.3d 379, 405 (3d Cir. 2000), while an entity that is not a "debt collector" may not be, *see Wadlington v. Credit Acceptance Corp.*, 76 F.3d 103, 108 (6th Cir. 1996).  The principle is a sensible one, and has been followed by district courts in this circuit.  *Compare Okyere v. Palisades Collection, LLC*, ___ F. Supp. 2d. ___, 2013 WL 1173992, at \*6 (S.D.N.Y. Mar. 22, 2013), *with Doherty v. Citibank (S. Dak.) N.A.*, 375 F. Supp. 2d 158, 162 (E.D.N.Y. 2005).

Although LVNV is alleged to own the debts at issue as the result of assignments by the original creditors, it does not dispute that it falls within the FDCPA's definition of "debt collector."  *See Police*, 225 F.3d at 403 ("[A]n assignee may be deemed a 'debt collector' if the obligation is already in default when it is assigned.").  The SAC's allegation that LVNV engaged in a joint venture with Resurgent LP and Resurgent LLC to collect its debts gives rise to a reasonable inference—at least at this stage of the litigation—that LVNV directed the actions of those defendants.

LVNV argues that there would have been no FDCPA violation had it sued in its own name.  That argument misses the point.  Plaintiffs' theory is that LVNV used Resurgent LLC and Resurgent LP to shield itself from FDCPA liability that might have arisen had LVNV attempted to collect its debts in its own name.

**B.  Alegis**

Alegis does not dispute the allegations that it is a "debt collector" and the general partner of Resurgent LP.  "The basic premise of limited partnership law is that general partners are personally liable for partnership obligations but limited partners are

19

not." *In re LJM Co-Inv., L.P.*, 866 A.2d 762, 772 (Del. Ch. 2004).[9]  That rule makes a general

partner liable for the FDCPA violations of the partnership.  *See Pollice*, 225 F.3d at 405 n.9

(holding general partner liable "where the limited partnership meets the definition of 'debt

collector'").

## CONCLUSION

Defendants' motion to dismiss is granted as it pertains to the FDCPA claim

based on the May 27, 2010 letter from the Harris Firm to Fritz.  In all other respects, it is

denied.

**SO ORDERED.**

_____
FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
July 24, 2013

---

[9]The Court cites Delaware law because both Resurgent LP and Alegis are Delaware corporations, but the same rule obtains in New York.  *See United States v. 175 Inwood Assocs., LLP*, 330 F. Supp. 2d 213, 224 (E.D.N.Y. 2004) ("[U]nder New York [p]artnership law, general partners in a limited liability partnership are not protected as individuals from liability incurred by the partnership if the assets of the partnership are insufficient to satisfy the liability.").