## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| **Giselle Fritz f/k/a Giselle Carter** | § | |
| **Evan Davis** | § | **Case No.:  1:11-cv-03300-FB-VVP** |
| **Jason Spiegel-Grote** | § | |
| **On behalf of themselves and all others** | § | |
| **similarly situated** | § | |
| **Plaintiffs** | § | |
| **v.** | § | |
| **Resurgent Capital Services, LP** | § | |
| **LVNV Funding, LLC** | § | |
| **Alegis Group, LLC** | § | |
| **Mel S. Harris And Associates, LLC** | § | |
| **David Waldman** | § | |
| **Resurgent Capital Services, LLC** | § | |
| **Defendants** | | |

## PLAINTIFFS' MEMORANDUM IN SUPPORT OF UNOPPOSED MOTION FOR FINAL APPROVAL OF SETTLEMENT AGREEMENT, AND APPLICATION FOR ATTORNEYS' FEES AND COSTS AND CLASS REPRESENTATIVE'S INCENTIVE AWARDS

# Table of Contents

**Introduction**......................................................................................................... 1

I.   Factual And Procedural Background .............................................................. 1

II.  Class for Whom Final Approval Is Sought.................................................... 2

III. The Class is Obtaining Substantial Benefit from the Proposed Settlement....................... 3

IV. Argument ....................................................................................................... 6

      A.     The Court Should Grant Final Approval Of The Settlement As Plaintiffs Have Met Each of the Grinnell Factors. .......................................... 6

           1.     The complexity, expense, and likely duration of the litigation. ................ 6

           2.     The reaction of the class to the settlement. ................................................ 7

           3.     The stage of the proceedings and the amount of discovery completed................................................................................................... 7

           4.     The risks of establishing liability. .............................................................. 8

           5.     The risk of establishing damages. .............................................................. 8

           6.     The risk of maintaining the class action through trial................................ 9

           7.     The ability of the Defendants to withstand a greater judgment. .............. 10

           8.     The range of reasonableness of the settlement fund in light of the best possible recovery and the risks of litigation. .................................... 10

      B.     The Requested Attorneys' Fees Are Reasonable................................................. 13

      C.     The Requested Service Award Is Proper ............................................................ 19

V.  Conclusion ................................................................................................... 22

i

**Table of Authorities**

<u>Cases</u>

*Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997). ....9

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany & Albany Cty. Bd. of Elections,* 522 F.3d 182 (2d Cir.2007).........................................................................................13,14

*Cox v. Sherman Capital LLC et al.,* No. 1:12-cv-01654-TWP-MJD (S.D. Ind.) ...........................5

*Crawford v. Equifax Payment Serv., Inc.,* 201 F.3d 877, 882 (7th Cir. 2000) .............................10

*De La Paz v. Rubin & Rothman, LLC,* No. 11 Civ. 9625, 2013 WL 6184425 (S.D.N.Y. Nov. 25, 2013) ........................................................................................................................................15

*Dornberger v. Metro Life Ins. Co.,* 203 F.R.D. 118 (S.D.N.Y. 2001)..........................................22

*Frank v. Eastman Kodak Co.*, 288 F.R.D. 174 (W.D.N.Y 2005) ..................................................22

*Fritz v. Resurgent Capital Servs.,* LP, 955 F. Supp. 2d 163, 171 (E.D.N.Y. 2013)................12

*Goldberger v. Integrated Res., Inc.,* 209 F.3d 43, 45 (2d Cir. 2000)............................................15

*Gross v. Washington Mutual Bank, F.A.* No. 02 CV 4135 2006 WL 318814 (Feb. 9, 2006 E.D.N.Y) ................................................................................................................................21

*In re Am. Investors Life Ins. Co. Annuity Mktg. & Sales Practices Litig.*, 263 F.R.D. 226, (E.D. Pa 2009). .....................................................................................................................................19

In re Deepwater Horizon Appeals, 739 F.3d 790 (5th Cir. 2014). .................................................9

In re NASDAQ Market-Makers Antitrust Litig., 176 F.R.D. 99 (S.D.N.Y. 1997). .......................6

In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig., 991 F. Supp. 2d 437 (E.D.N.Y. 2014), *vacated and reversed on other grounds*, ___ F. 3d. ___ , 2016 WL 3563719 (2d Cir. 2016)…………………………………………………………………………………17

*In re* Risk Mgmt. Alternatives, Inc., 2002 U.S. Dist. LEXIS 11055 (S.D.N.Y. June 14, 2002)...10

*Jacobson v. Healthcare Fin. Servs.*, 516 F.3d 85 (2d Cir. N.Y. 2008)..........................................12

*Johnson v. Ga. Highway Express, Inc.,* 488 F.2d 714 (5th Cir.1974) ...........................................14

*Mazzei v. Money Store*, No. 15-2054, -- F3d --, 2016 WL 3876518 (2d Cir. July 15, 2016).........9

*Parker v. Jekyll & Hyde Enm't Holdings*, LLC, 2010 WL 532960 (S.D.N.Y. Feb. 9, 2010). ......19

*Poertner v. Gillette Co.*, 618 Fed. Appx. 624 (11th Cir. 2015)…………....................................17

*Reade-Alvarez v. Eltman, Eltman, & Cooper, P.C.*, No. CV-04-2195 (CPS), 2006 WL 3681138, (E.D.N.Y. Dec.11, 2006) ...........................................................................................................14

*Reyes v. Altamarea Grp.*, No. 10 civ. 6451 2011 WL 4599822, (S.D.N.Y. Aug. 16, 2011).........21

*Roberts v. Texaco*, 1997 WL 583473 (S.D.N.Y 1997). ................................................................19

*Rodriguez v. Pressler & Pressler, L.L.P.,* No. CV-06-5103 BMC/JO, 2009 WL 689056 (E.D.N.Y. Mar. 16, 2009) ........................................................................................14

*Samms v. Abrams*, No. 15-CV-2741 (JSR), 2016 WL 4045473 (S.D.N.Y. July 28, 2016) 13,14,16

*Savoie v. Merchants Bank*, 166 F.3d 456, 460 (2d Cir.1999).........................................................15

*Sykes v. Mel S. Harris and Associates*, No. 09 Civ. 8486 (DC) 2016 WL 3030156 (S.D.N.Y. 2016) ........................................................................................19

*Sibley v. Fulton DeKalb Collection Serv.*, 677 F.2d 830 (11th Cir. 1982) ...................................10

*Torres v. Toback, Bernstein & Reiss LLP*, CV-11-1368 NGG VVP, *2014 WL 988480* (E.D.N.Y. Mar. 14, 2014) *report and recommendation adopted in part, rejected in part*, 11-CV-1368 NGG VVP, 2014 WL 1330957 (E.D.N.Y. Mar. 31, 2014) ...................................................................19

*Vassalle v. Midland*, 708 F.3d 707 (6th Cir. 2013).......................................................................18

*Weiss v. Fein, Such, Kahn & Shepard, P.C.,* 2002 U.S. Dist. LEXIS 4783 (S.D.N.Y. Mar. 21, 2002). ........................................................................................10

## *Rules*

Fed.R.Civ.P. 23(a) ........................................................................................6

Fed.R.Civ.P.68(d) ........................................................................................19

## *Statutes*

15 U.S.C. 1692, *et seq*.........................................................................................1

15 U.S.C. § 1692k(a)(2)(B)(ii). ......................................................................................4,5

New York General Business Law § 349 *et seq*................................................................ *passim*

## *Treatises*

Fair Debt Collection (8th ed. 2014), published by the National Consumer Law Center...............18

Fair Debt Collection (8th ed. 2014), published by the National Consumer Law Center...............18

## *Congressional Reports*

S. Rep. No. 382, 95th Con., 1st Sess. 5

iv

**Introduction**

Plaintiffs file this Memorandum In Support Of Unopposed Motion For Final Approval Of Settlement Agreement, And Application For Attorneys' Fees And Costs And Class Representative's Incentive Awards, and in support would show as follows. Plaintiffs also attach to this Memorandum a proposed Final Order and Judgment which will fully dispose of this matter. *See* Exh A to Declaration of Ahmad Keshavarz (Keshavarz Decl")

**I.        Factual And Procedural Background**

Plaintiffs, Giselle Fritz f/k/a Giselle Carter, Evan Davis, Jason Spiegel-Grote, and Patricia Casertano, on behalf of themselves and all others similarly situated, brought suit against Defendants for their alleged violations of the Fair Debt Collection Practices Act, 15 U.S.C. 1692, *et seq*., (the "FDCPA"), and N.Y. Gen. Bus. Law § 349 *et seq.* for systematically filing and prosecuting hundreds of collection lawsuits without having a license or standing to do so, for making deceptive and misleading representations as to the putative creditor's dunning letters and other written communications with thousands of alleged debtors, and for making misrepresentations in submissions to credit reporting agencies.

Plaintiffs filed this putative class action on July 8, 2011 [ECF 1], a First Amended Complaint [ECF 2] later that same day, and a Second Amended Complaint on June 11, 2012, [ECF 28]. Defendants answered the original and amended complaints. Defendants filed a motion for judgment on the pleadings on December 12, 2012, [ECF 39]. On July 24, 2013, Judge Block denied Defendants' motion for judgment on the pleadings, except as to one issue. [ECF 48]. Thereafter, the parties engaged in extensive discovery regarding the remaining causes of action. On or about February 27, 2015, the parties entered into a preliminary settlement agreement. Subsequently, on or about August 26, 2015, the parties entered into a formalized Settlement

Agreement And Stipulation. *See* Settlement Agreement, Exh B to Keshavarz Declaration ("Keshavarz Decl.").

Pursuant to the terms of that agreement, on November 23, 2015, Plaintiffs submitted their Notice Motion for Class Certification and Preliminary Approval of Class Action Settlement, and Memorandum of Law and Declaration in Support [DE 130-133]. Oral argument on the motion was held on June 1, 2016. Later that day the Court issued an order granting preliminary approval to the proposed class action settlement [DE 133], and appointed Ahmad Keshavarz, Charles Delbaum, and Matthew Schedler as class counsel. Notice to class members has been sent by first class mail. As discussed in Section IV(A)(2) below, out of the over 56,000 members in the class, there have been no objectors and only six opt outs.

## II.      Class for Whom Final Approval Is Sought

Plaintiffs move for final certification of the one class and three subclasses that have been preliminarily certified. The class and the three subclasses consist of all persons who, according to Defendants' records, have addresses, or who during the Class Period had addresses, within New York State, and who fall into the categories listed below. The principal class is the Credit Reporting Class, which contains as subclasses, the Misidentification Subclass, the Lack of Standing Subclass, and the Unlicensed Subclass.

a. The "**Credit Reporting Class**" contains persons who had a lawsuit filed against them by any of the Defendants where the amount of a debt reported to any Credit Reporting Agency included an amount for costs that was not awarded by a court in an underlying action to collect the debt.

b. The "**Misidentification Subclass**" contains persons in the Credit Reporting Class to whom Defendants either sent a written communication (including pleadings) that stated that Resurgent Capital Services, LLC was the purchaser and assignee of a debt claimed against the person; or to whom Defendants sent a written communication that was materially identical or substantially similar to the May 27, 2010 letter sent to Plaintiff Giselle Fritz f/k/a Giselle Carter (DE 1 p. 36, of the Action).

c. The "**Lack of Standing Subclass**" contains persons in the Credit Reporting Class who had a lawsuit filed against them in a New York Court by Resurgent Capital

2

Services, LLC to collect a debt in which it was alleged that Resurgent Capital Services, LLC was the purchaser, owner or assignee of, or owned or retained all beneficial rights and interests in the debt.

d. The "**Unlicensed Subclass**" contains persons in the Credit Reporting Class who had a lawsuit filed against them by Defendants to collect a Debt that listed on the complaint a debt collection license number other than that of the plaintiff named in that lawsuit.

The class period begins on July 8, 2008 for the Credit Reporting Class and April 16, 2009 for the Misidentification, Lack of Standing, and Unlicensed Subclasses, and ends on the date of Preliminary Approval for the class and subclasses.

The statute of limitations is one year for the FDCPA claims and three years for New York General Business Law ("GBL") § 349 claims. Defendants' represented in discovery responses and in the settlement agreement itself that there are the following number of people in the Credit Reporting Class, and in each of the subclasses:

a. "Credit Reporting Class:" 56,545.

b. "Misidentification Subclass:" 4,942.

c. "Lack of Standing Subclass:" 537.

d. "Unlicensed Subclass:" 537.

The members of Lack of Standing and Unlicensed Subclasses are exactly the same. All of the members of the Lack of Standing and Unlicensed Subclasses are a subset of the Misidentification Subclass; and all members of the Misidentification Subclass are a subset of the Credit Reporting Class.

**III.   The Class is Obtaining Substantial Benefit from the Proposed Settlement.**

The benefits to the class and subclasses here are substantial, and in some ways even superior than if the Plaintiffs were to prevail at trial.  *See* Settlement Agreement ¶ 5.1-5.12, Exh B to Keshavarz Decl. Specifically, class members get non-cash injunctive relief benefits that would be difficult to obtain even if Plaintiffs prevailed on all claims at trial. These substantial

non-cash benefits are discussed further under the specific *Grinnell* factors below.

In addition to the substantial non-cash benefits, Defendants, jointly and severally, are required to establish a Settlement Fund of $280,000.00 to pay class damages, incentive fees, and attorney's fees and costs. Importantly, in addition to the payment into the Settlement Fund, Defendants have paid Settlement Administration Costs and Expenses of approximately $57,000. *See* Declaration of Bailey Hughes, Claims Administrator, to be filed on ECF shortly.

From the Settlement Fund, plaintiffs have proposed that $139,515 will be distributed to class members as follows: The 4,962 members of the Misidentification Subclass will each receive $20.00, for a total amount of $99,240. The 537 members of the Lack of Standing and Unlicensed Class, who likely suffered a greater injury than those in the Misidentification Subclass will each receive $75.00, for a total amount of $40,275. (The members of the Lack of Standing Class are identical to the members of the Unlicensed Class).

Two of the Named Plaintiffs – Giselle Fritz f/k/a Giselle Carter and Jason Spiegel-Grote – would get incentive awards of $1,500 each if approved by the Court. The other two Named Plaintiffs, Patricia Casertano and Evan Davis, who were deposed by Defendants, would get incentive awards of $2,500 each. The reasons supporting this request are discussed in Section IV (C), *infra*.

From the $280,000 Settlement Fund, putative Class Counsel are requesting an award of attorney's fees and costs of $139,515. The reasons supporting this request are discussed in Section IV (B), *infra*. The settlement is fair, reasonable and adequate and within the range of possible approval.

FDCPA statutory damages in a successful class action are limited to an amount "not to exceed the lesser of $500,000 or 1 per centum of the net worth of the debt collector." 15 U.S.C.

§ 1692k(a)(2)(B)(ii).  Here, Mel S. Harris and Associates, LLC advises Plaintiffs that it has gone out of business, making its net worth zero. One percent of the net worth of the individual attorney named personally, David Waldman, was presumably negligible. In settlement negotiations, the Resurgent Defendants represented that their net worth was approximately the same as the amounts they publicly disclosed in court ordered discovery answers in a recent class action, *Cox v. Sherman Capital LLC et al.*, No. 1:12-cv-01654-TWP-MJD (S.D. Ind.).  *See* LVNV and Resurgent balance sheets, Exh C and D to Keshavarz Decl. Accordingly, LVNV's net worth was represented as being approximately $10.6 million and Resurgent LP's net worth was approximately $7.1 million. One percent of $17.7 million is $177,000.  Here, class members will receive $139,515, plus the valuable injunctive relief described above. A recovery of nearly 80% of the maximum possible damages is particularly impressive because there is no *minimum* amount of FDCPA class statutory damages. Instead the Court is to consider a number of factors in determining the amount "not to exceed" the statutory cap. 15 U.S.C. § 1692k(b)(2).

Members of the settlement class will be eligible to obtain a settlement payment without running any of the risks associated with engaging in complex, expensive, and lengthy litigation, or of maintaining a class action through trial, and without facing any of the difficulties of establishing liability and damages.  Moreover, all class members have the opportunity to opt out of the settlement.   In the event that any part of the fund is not dispensed from un-cashed, expired Settlement Checks sent to the settlement-class members, the remaining amount would be paid to a *cy pres* recipient.  Therefore, none of the money will revert back to Defendants. The *cy pres* recipient is the Fordham Law School Feerick Center for Social Justice, a New York legal services entity agreed upon by the parties that provides consumer credit services to consumers, if approved by the Court.

The parties settled only after extensive arm's-length settlement negotiations. There is no indication that the settlement was the product of collusion, and indeed, there was none.   Finally, no evidence exists that the proposed settlement accords the class representative or any portion of the class "improper[ ] ... preferential treatment." *In re NASDAQ Market-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997).

## IV.      Argument

### A.      The Court Should Grant Final Approval Of The Settlement As Plaintiffs Have Met Each of the Grinnell Factors.

The settlement of a class action requires court approval. Fed. R. Civ. P. 23(e) (a district court can approve a class action settlement only if it is fair, adequate and reasonable). The Second Circuit has enumerated nine factors, known as the *Grinnell* factors, to guide courts in evaluating the fairness of a proposed settlement:

> (1) The complexity, expense, and likely duration of the litigation, (2) the reaction of the class to the settlement, (3) the stage of the proceedings and the amount of discovery completed, (4) the risks of establishing liability, (5) the risks of establishing damages, (6) the risks of maintaining the class action through trial, (7) the ability of the defendants to withstand a greater judgment, (8) the range of reasonableness of the settlement fund in light of the best possible recovery, (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974)(internal citations omitted) *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000)

The law "favors settlement of class actions" just as in other cases.   *In re Toys R Us Antitrust Litigation*, 191 F.R.D. 347, 350 (E.D.N.Y. 2000). The central question raised by the proposed settlement of the class action is whether the compromise is fair, reasonable, and adequate. *Id*. (*citing Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982)).

### 1.   The complexity, expense, and likely duration of the litigation.

Given the complexity of the legal issues raised by the litigation, achieving a resolution of this matter through further litigation rather than by means of a settlement would involve substantial time, resources, and risk, further discovery, class certification motions, expert testimony, summary judgment, and possibly trial and appeal. Plaintiffs have propounded multiple sets of discovery demands, and have moved for orders to compel the same. Defendants have also propounded discovery demands, which Plaintiffs have answered. The parties have exchanged thousands of pages of document production. Plaintiffs' counsel Mr. Keshavarz has taken the depositions of the corporate representatives of the Harris firm and the Resurgent Defendants. The parties had set aside several days for additional depositions of witnesses for the Resurgent Defendants in South Carolina when the parties entered into serious settlement discussions that resulted in this settlement. Defendants have already deposed two named plaintiffs, Patricia Casertano and Evan Davis, and the parties were in the midst of arranging the depositions of the other named plaintiffs. The case has been litigated vigorously since its filing in 2011, with substantial additional discovery and motion practice ahead if settlement was not reached. This factor supports final approval.

**2. The reaction of the class to the settlement.**

The reaction of the Class to the settlement has been positive. Out of a class of 56,545 persons, there have been only six opt outs and no objections. *See* Affidavit of Bailey Hughes, Claims Administrator to be filed on ECF). This is despite the fact the notice was provided by first-class mail at the last known addresses of class members. *Id*. This response weighs "heavily in favor of a strong presumption of fairness." *See In re Rite Aid Securities Litigation*, 269 F. Supp. 2d 603, 608 (E.D. Pa. 2003). Therefore, this factor supports final approval.

**3. The stage of the proceedings and the amount of discovery completed.**

The stage of the proceedings and the amount of discovery are discussed under Grinnell factor number one, and support final approval.  In addition, as the docket sheet reflecting 145 docket entries suggests, this case has been vigorously litigated.

### 4.   **The risks of establishing liability.**

To establish liability under Plaintiffs' GBL 349 claims, Plaintiffs would have to prove some form of injury. *Gale v. Int'l Bus. Machs. Corp.*, 9 A.D.3d 446, 781 N.Y.S.2d 45, 47 (2004). Injury would need to be established on a class basis. (In contrast, consumers need not prove "injury" under the FDCPA to establish liability). This could prove challenging for the 56,000 member credit reporting class, as liability flows from the marginal increase in the amount reported as due, from the amount of the debt alone to the amount of the debt plus approximately $130 in costs of court. To establish that such a differential was injurious throughout this class would be challenging.  Indeed, to the knowledge of the undersigned, there has never before been a case establishing GBL 349 liability based on a marginal increase in the amount reported to a credit reporting agency. Therefore, this factor supports final approval.

### 5.   **The risk of establishing damages.**

In an FDCPA case,  consumers do not need to establish actual damages (or injury) in order to establish liability and be awarded statutory damages. However, the FDCPA caps statutory damages in a class action at one percent of net worth or $500,000, whichever is *less.* In settlement negotiations, the Resurgent Defendants represented that their net worth was approximately the same as the amounts they publicly disclosed in court ordered discovery answers in a recent class action, *Cox v. Sherman Capital LLC et a*l., No. 1:12-cv-01654-TWP-MJD (S.D. Ind.).  *See* LVNV and Resurgent balance sheets, Exh C and D to Keshavarz Decl. Furthermore, there is no minimum amount statutory amount. Given the representations of

Defendants as to net worth, the maximum statutory cap would appear to be approximately $177,000. However, as there is no minimum award, it is entirely possible that the jury would award statutory damages of far less than $177,000. Further, LVNV challenged whether it was liable for the FDCPA violations of Harris. Should that argument ultimately prevail, Plaintiffs would be left with one percent the net worth of Harris, which would be close to zero given that the Harris firm has apparently closed.

Actual damages may also be recovered under the FDCPA, but there are challenges that would have to be overcome to obtain them on a class basis. For example, it would be challenging to quantify, on a class basis or otherwise, the dollar value of the actual damages resulting from LVNV inflating on credit reports the amount due by approximately $130. Similarly, whether such a relatively minor inflation in credit reporting of the amount allegedly due on a debt constitutes a cognizable injury under GBL 349 is unsettled.

For these reasons, this factor supports final approval.

## 6.   The risk of maintaining the class action through trial.

Class certification had not been sought or granted prior to the parties reaching a class settlement. Although certification is warranted and appropriate, if the issue were contested outside the settlement context, Defendants could raise manageability concerns – for example, regarding damages – that do not exist when a settlement, rather than a trial, is proposed. "[A] district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997). *See, e.g., In re Deepwater Horizon Appeals*, 739 F.3d 790 (5th Cir. 2014). Moreover, there is also always a risk for decertification before, during, or after trial. *See e.g. Mazzei v. Money Store*, No. 15-2054, -- F.3d --, 2016 WL

3876518 (2d Cir. July 15, 2016)(upholding district court's class decertification after a jury verdict and before the entry of final judgment.)

### 7.   The ability of the Defendants to withstand a greater judgment.

After the signing of this settlement agreement, Defendant Mel S. Harris and Associates, LLC went out of business. Therefore, a judgment against that Defendant would be of no value. However, Plaintiffs' counsel anticipated this possibility, and therefore, as part of the settlement, insisted that this risk be addressed by having all Defendants being jointly and severally liable to all settlement fund payments.

### 8.   The range of reasonableness of the settlement fund in light of the best possible recovery and the risks of litigation.

Defendants have agreed to pay to the class approximately 80% of the best possible monetary recovery under the FDCPA. See Section III, *supra*. While an additional recovery is theoretically possible under GBL 349, certification of such a class poses significant challenges, discussed above in Sections IV(A)(5) and (6). Most importantly, however, the best possible recovery at trial would not include substantial benefits to the class and subclasses that Defendants have agreed to provide in order to achieve a reasonable settlement of this matter. Specifically, class members get non-cash injunctive relief benefits that would be difficult to obtain even if Plaintiffs prevailed on all claims at trial. *See* Settlement Agreement ¶ 5.1-5.12, Exh. B to Keshavarz Decl.  Indeed, the majority view is that injunctive relief is not available under the FDCPA. *See, e.g., Crawford v. Equifax Payment Serv., Inc.*, 201 F.3d 877, 882 (7th Cir. 2000) (dicta, citing *Sibley*); *Sibley v. Fulton DeKalb Collection Serv*., 677 F.2d 830, 834 (11th Cir. 1982);*In re Risk Mgmt. Alternatives, Inc*., 2002 U.S. Dist. LEXIS 11055 (S.D.N.Y. June 14, 2002); *Weiss v. Fein, Such, Kahn & Shepard, P.C*., 2002 U.S. Dist. LEXIS 4783

(S.D.N.Y. Mar. 21, 2002). As to the Credit Reporting Class, the settlement calls for the entry of a judgment against Defendants Resurgent LP and LVNV, requiring them to delete any existing tradelines for debts currently being reported to the Credit Reporting Agencies. This relief is substantial. The claims regarding the Credit Reporting Class are that Defendants reported inflated amounts to the credit reporting agencies, falsely including putative amounts for costs of court that have not yet been awarded in an entry of judgment. Therefore, even if Plaintiffs fully prevailed at the trial, the only injunctive relief they might be able to obtain under GBL 349 was an injunction to correct the amount reported to the Credit Reporting Agencies; that is, by removing the amounts of costs of court from the amount reported. However, by way of settlement, the Credit Reporting Class members are having the *entire* debt removed from the credit report, not just a reduction of the amount of the debt. As of the date of the date of the settlement agreement, the amount being reported is approximately $3.5 million. Removing these sums from credit reports should substantially improve many class members' credit scores.

Further, the scope of the Credit Reporting Class is broader than it may first appear. A consumer is a member of the Credit Reporting Class – and receives the full benefit of a deletion of the entire debt from the credit report – if at *any point* during the class period an amount was reported to a credit reporting agency that included costs of court when there was no adjudication by judgment that court costs were owed. Assume, for example, a collection suit was filed in January 1, 2013; an amount was reported to the credit reporting agencies on February 1, 2013 that included costs of court; judgment was entered on March 1, 2013 awarding costs of court; and on April 1, 2013 an amount was reported to the credit reporting agencies that again included costs of court.  The first time costs were reported (February 1, 2013) was improper because costs were not yet awarded, making that consumer a member of the Credit Reporting Class. That

consumer remains a member of the Credit Reporting Class even though judgment was later entered (March 1, 2013) and thus making accurate the reporting (beginning April 1, 2013) of an amount that included costs of court. All Credit Reporting Class members get the full benefit of the deletion of the *entire* debt from the credit report, even if the reporting was inaccurate for only a short period of time, such as between the filing of suit and the entry of a default judgment.

The Lack of Standing Class members also receive another type of injunctive relief, one that would be difficult to achieve via a federal court judgment because of the *Rooker-Feldman* Doctrine. Specifically, judgments currently in the name of Resurgent LLC will be vacated and those suits discontinued with prejudice. There are 38 such persons and the current amount of the judgments to be vacated is approximately $164,000. Further, Defendants will discontinue the 103 lawsuits pending in the name of Resurgent LLC as of the date of the Settlement. The principal amount claimed due in these lawsuits is $376,728.87.

Members of the Misidentification Subclass also get a substantial benefit in addition to the clearing of their tradeline. In denying Defendants' Motion to Dismiss, this court held the misidentification of the owner of the debt could be a materially false representation because, *inter alia*, it could lead the consumer to pay Resurgent LLC but then leave the consumer vulnerable to suit by LVNV for the same debt.

> A consumer—even a sophisticated one—might reasonably believe that paying the entity bringing suit would extinguish the debt. Yet because of the misrepresentation as to the ownership of the debt, paying Resurgent LLC would have left the debtor vulnerable to a suit by the true owner, LVNV. Indeed, plaintiff Patricia Casertano alleges that she was sued by LVNV while the suit by Resurgent LLC was pending.

*Fritz v. Resurgent Capital Servs., LP*, 955 F. Supp. 2d 163, 171 (E.D.N.Y. 2013).

To address this very real concern, the Settlement requires Defendants to certify that all payments made in connection with a lawsuit commenced in the name of Resurgent LLC have been credited against the corresponding LVNV account.

## B.   The Requested Attorneys' Fees Are Reasonable.

### 1.   FDCPA public policy.

Congress designed the FDCPA to be enforced primarily through private parties – such as Named Plaintiff – acting as "private attorneys general." *See* S. Rep. No. 382, 95th Con., 1st Sess. 5 ("The committee views this legislation as primarily self-enforcing; consumers who have been subject to debt collection abuses will be enforcing compliance."); and *Jacobson v. Healthcare Fin. Servs.*, 516 F.3d 85, 91 (2d Cir. N.Y. 2008) ("In this way, the FDCPA enlists the efforts of sophisticated consumers like [Plaintiff] as 'private attorneys general' to aid their less sophisticated counterparts, who are unlikely themselves to bring suit under the Act, but who are assumed by the Act to benefit from the deterrent effect of civil  actions brought by others.").

### 2.   The hourly rate of Plaintiffs' counsels are well within the range recognized by other NY courts.

"[A] court should "bear in mind all of the case-specific variables that [the Second Circuit] and other courts have identified as relevant to the reasonableness of attorney's fees in setting a reasonable hourly rate." In particular, "the district court should consider, among others, the *Johnson [v. Ga. Highway Express, Inc.,* 488 F.2d 714 (5th Cir.1974)] factors." *Id. Samms v. Abrams*, No. 15-CV-2741 (JSR), 2016 WL 4045473, at *4 (S.D.N.Y. July 28, 2016) *quoting Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany & Albany Cty. Bd. of Elections*, 522 F.3d 182, 190 (2d Cir.2007).

The hourly rate sought by Plaintiffs' counsels are well within the range recognized by other New York courts applying *Arbor Hill* in FDCPA cases. "[A] $400 per hour, and even $550 per hour, has been accepted as a reasonable rate for FDCPA work in this district." *Samms* at *4 *citing to De La Paz v. Rubin & Rothman, LLC*, No. 11 Civ. 9625, 2013 WL 6184425 at *6 (S.D.N.Y. Nov. 25, 2013) (accepting FDCPA rates of $550 and $400, although pointing out that they are "at the high end of rates awarded for FDCPA work").

In *Rodriquez*, a small-firm attorney with seventeen years' experience sought fees in an FDCPA case in the amount of $450 per hour for himself and $300 for his Legal Services colleague with just six years of experience. *Rodriguez v. Pressler & Pressler, L.L.P.*, No. CV-06-5103 BMC/JO, 2009 WL 689056, at *1 (E.D.N.Y. Mar. 16, 2009). The magistrate judge decided that the attorneys were to be paid $200 and $150, respectively, but District Judge Cogan rejected the magistrate's report and recommendation and awarded the full hourly rate sought:

> Having reviewed the factors set forth in *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany,* 522 F.3d 182, 184 (2d Cir.2008), unlike Magistrate Judge Orenstein, I am convinced that a paying client would be willing to pay hourly rates of $450 and $300 for the services that Brinckerhoff and Wilner have rendered here. Although I take Magistrate Judge Orenstein's point that there are experienced counsel available to handle these types of matters for lower hourly rates, I find that counsels' requested rates are within the reasonable range for FDCPA cases in this district.

> *Id.*

*See also Reade-Alvarez v. Eltman, Eltman, & Cooper, P.C.*, No. CV-04-2195 (CPS), 2006 WL 3681138, at *9 (E.D.N.Y. Dec.11, 2006)(approving hourly rate of $420 for experienced attorney in FDCPA case).

3.    **Evaluating reasonable attorney's fees in class actions.**

To determine the reasonableness of the fee award provided for in the Settlement Agreement, the Court may apply two standards of evaluation: the lodestar method or the

percentage-of-the-fund approach. *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 45 (2d Cir. 2000)( "[E]ither the lodestar or percentage of the recovery methods may properly be used to calculate [attorney's] fees in common fund [class action] cases…") A lodestar is calculated as the number of hours reasonably expended multiplied by a reasonable hourly rate. *Id*. at 47 *citing to Savoie v. Merchants Bank*, 166 F.3d 456, 460 (2d Cir.1999). Under a percentage method, the court sets a percentage of the recovery of the recovery that goes towards attorney's fees. The requested fee is reasonable under either method.

4.   **The attorney's fees sought here are certainly reasonable, and far below the lodestar of counsels.**

Under the terms of the settlement, Defendants will put $280,000 into at settlement fund. Further, Defendants have paid all of the costs of administration.  The total cost of administration is estimated as just over $57,000 by the claim's administrator.  *See* Bailey Hughes Affidavit (to be filed on ECF prior to the hearing on Final Approval).  Costs of notice and administration can be included in the common fund in determining reasonable attorney fees. *See Staton v. Boeing Co.*, 327 F.3d 938, 975 (9th Cir. 2003)("We conclude that where the defendant pays the justifiable cost of notice to the class… it is reasonable (although certainly not required) to include that cost in a putative common fund benefiting the plaintiffs for all purposes, including the calculation of attorneys' fees.") Therefore the total recovery for the class is in fact $337,000, the sum of the $280,000 settlement fund and the $57,000 cost of administration. Class Counsels are taking a substantial fee reduction so that attorney's fees are just 38 percent of the class recovery.

The reasonableness of Class Counsels attorney's fees request demonstrated by the lodestar cross check: Plaintiffs' counsels are accepting just ***31 percent*** of their lodestar. The following table summarizes the lodestar of counsels in this case.

15

| Attorney | Hours | Rate | Lodestar |
|---|---|---|---|
| Delbaum | 169.6 | 550 | 93,280 |
| Keshavarz (2011-2014) | 476 | 375 | 178,500 |
| Keshavarz (2015-2016) | 230 | 400 | 92,000 |
| Schedler | 103.2 | 300 | 30,960 |
| Cohen | 54.4 | 325 | 17,680 |
| TOTAL LODESTAR | | | 412,420 |
| FEES AND COSTS SOUGHT | | | 132,485 |
| MINUS CASE EXPENSES: | | | -4,388 |
| FEES SOUGHT: | | | 128,097 |
| **FEES SOUGHT AS % OF LODESTAR** | | | **31%** |

Mr. Keshavarz has worked approximately 476 hours from May 11, 2011 to September 22, 2014 at an hourly rate of $375, for $178,500 in fees. *See* Keshavarz Declaration for Attorney's Fees, Exh E to Keshavarz Decl. Mr. Keshavarz has worked an additional 230 hours at an hourly rate of $400, for an additional $92,000 in fees. *Id.* In sum, Mr. Keshavarz's reasonable lodestar is $270,500. *Id.* Mr. Keshavarz has been adjudicated as having a $400 reasonable hourly rate in FDCPA litigation. "Upon consideration of the Johnson factors and other case-specific variables, the Court concludes that $400 is a reasonable hourly rate for plaintiff's counsel[, Mr. Keshavarz.] $400 per hour, and even $550 per hour, has been accepted as a reasonable rate for FDCPA work in this district."[1] *Samms v. Abrams*, No. 15-CV-2741 (JSR), -- F.Supp.3d ----, 2016 WL 4045473, at *4 (S.D.N.Y. July 28, 2016).Therefore, Mr.

---

[1] The Johnson factors are (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee in the community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount of time involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. The facts asserted as the basis for final approval and class appointment also support these factors.

Keshavarz's total loadstar in this case is $270,000. Mr. Keshavarz has also paid approximately 4,388.93 in case expenses, primarily for depositions. *Id*.

Mr. Delbaum has worked approximately 169.6 hours in this case up to August 17, 2016, at an hourly rate of $550 for a total amount of $93,280. *See* Delbaum Declaration, Exh F to Keshavarz Decl. Also, an associate attorney at the National Consumer Law Center, Arielle Cohen, devoted an additional 54.4 hours to this case. *Id*. Ms. Cohen is graduate of New York University School of Law (J.D., cum laude, 2006), who has been admitted to practice since 2006. Her hourly rate is $300 making her total reasonable lodestar $17,680. *Id*.

Mr. Schedler's has worked approximately 103 hours from the beginning of his work on this case to August 18, 2016, at an hourly rate of $300 for a lodestar amount of $30,900. *See* Schedler Declaration, Exh G to Keshavarz Decl.

In addition to their own declarations, the hourly rates sought by Plaintiffs' counsels are also supported by the declarations of two other seasoned FDCPA and FDCPA class action attorney who practice extensively in the ED NY and SD NY. *See* Declarations of Carolyn Coffey and Brian Bromberg, Exh H and Exh I to Keshavarz Decl.

Here, the class is getting substantial non-cash relief as previously indicated (e.g. credit report deletions, vacated judgments, dismissal of cases). The value of this relief is not reflected in the $280,000 settlement fund, and would be difficult to quantify. Therefore, considering the amount of money going to attorney's fees and costs as a percentage of the settlement fund greatly overstates the amount of the fees as a percentage of the value to class members. Despite being difficult to quantify, injunctive relief should still be considered in determining a reasonable attorney fee award. *See Poertner v. Gillette Co.*, 618 Fed. Appx. 624, 629 (11th Cir. 2015) (rejecting Objector's argument that analysis of a reasonable attorney fee should "exclud[e] the

17

substantial nonmonetary benefit and the cy pres award."); and *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.,* 991 F. Supp. 2d 437, 446 (E.D.N.Y. 2014) ("[A]lthough it is impossible to know with certainty the ultimate value of the injunctive relief, it may very likely exceed the value of the monetary relief in the long run. The injunctive relief is therefore a 'relevant circumstance,' [in analyzing an appropriate fee award] to say the least."), *vacated and reversed on other grounds*, ___ F. 3d. ___ , 2016 WL 3563719 (2d Cir. 2016).

Should the Court desire the underlying billing records demonstrating these hours, counsel will bring these records to the final approval hearing for the court to be entered as additional supporting evidence to the declarations of counsel.

Plaintiffs have retained counsel with substantial experience litigating claims of this type, both in class actions and in individual suits. Declarations of each counsel seeking appointment detailing their qualifications are attached as Exhibit E (Keshavarz Fee Declaration), Exhibit F (Delbaum Declaration), and Exhibit G (Schedler Declaration) to the Keshavarz Decl., and are incorporated by reference.

Attorney Charles Delbaum, a senior staff attorney at the National Consumer Law Center; has been counsel in 5 FDCPA class actions, as well as scores of other class actions; has successfully argued for reversal of a nationwide FDCPA class action settlement in *Vassalle v. Midland*, 708 F.3d 707 (6th Cir. 2013); and is the author of the litigation chapter in Fair Debt Collection (8th ed. 2014), published by the National Consumer Law Center (NCLC); and served as a principal editor of Consumer Class Actions (8th ed. 2013), also published by NCLC. *See* Delbaum Decl, Exh F to Keshavarz Decl.

Attorney Ahmad Keshavarz has been practicing law for over 16 years and exclusively consumer protection law for over a decade.  Mr. Keshavarz has brought 92 consumer protection

lawsuits in federal district courts as of May 16, 2016. Of those 92 lawsuits, 85 were for the enforcement of the FDCPA and related claims.  Mr. Keshavarz has over a dozen favorable decisions in FDCPA lawsuits. See Keshavarz Fee Decl, Exh E to Keshavarz Decl. Mr. Keshavarz has been appointed class counsel in another FDCPA class action in the ED NY. *Torres v. Toback, Bernstein & Reiss LLP*, CV-11-1368 NGG VVP, *2014 WL 988480* (E.D.N.Y. Mar. 14, 2014) *report and recommendation adopted in part, rejected in part*, 11-CV-1368 NGG VVP, 2014 WL 1330957 (E.D.N.Y. Mar. 31, 2014) ("The second element is clearly met here, since the proposed class counsel is indisputably qualified, experienced, and able to conduct the litigation.") Mr. Keshavarz is a 1999 graduate of the University of Texas School of Law. *Id*.

Attorney Matthew Schedler has been the attorney in charge of the CAMBA Legal Services Consumer Law Project since 2008. See Schedler Decl, Exh G to Keshavarz Decl. The Consumer Law Project provides free consumer law legal services to low income and working poor resident of New York City.  *Id*. Mr. Schedler is now the supervising attorney for the Consumer Law Project and oversees the two other attorneys in the project. *Id*. In federal court, Mr. Schedler has brought 6 FDCPA lawsuits, 5 Electronic Fund Transfer Act lawsuits and has objected to one class action settlement. *Id*. Mr. Schedler is a 2007 graduate of the Boston University School of Law. *Id*.

### C.    The Requested Service Award Is Proper

In accordance with the settlement agreement, Plaintiffs request that court approve service awards for Ms. Fritz and Mr. Spiegel-Grote in the amount of $1,500 each, and for Ms. Casertano and Mr. Davis in the amount of $2,500 each. The difference in the incentive award is to acknowledge the additional work and contributions of Ms. Casertano and Mr. Davis in preparing and sitting for depositions on behalf of the class. These awards were described in detail in the case notice and none of the 56,000 class members objected.

"Serving as a class representative sometime requires significantly greater effort and sometimes greater risk, than is required of absent Class Members. In addition, the named representative's willingness to serve in that capacity enables the litigation to be brought in the first place."[2] Service awards are important to compensate plaintiffs for the contributions they make in to advance the prosecution of their case. *Sykes v. Mel S. Harris and Associates*, No. 09 Civ. 8486 (DC) 2016 WL 3030156, at *18 (S.D.N.Y. 2016). And serve the dual functions of recognizing risk incurred by named plaintiff and compensating their efforts. *Parker v. Jekyll & Hyde Enm't Holdings*, LLC, 2010 WL 532960 at *1 (S.D.N.Y. Feb. 9, 2010). To determine the appropriateness of a service award, Courts review circumstances of the action with attention paid to the personal risk, incurred by the Plaintiff, the time and effort expended by the by Plaintiff during the prosecution of the litigation and the ultimate recovery for the class. *Roberts v. Texaco*, 1997 WL 583473 (S.D.N.Y 1997).

### *Significance of Time and Effort*

During the 5 years this action has been pending, the named plaintiffs contributed significant time and effort to the prosecution of the case. The class members provided detailed information about their financial history and the debt collection efforts taken against them. They assisted class counsel in responding to discovery and provided document, many of contained personal financial information – and opened themselves to discovery. Further, the named plaintiffs participated in lengthy and complex settlement discussions and readily made themselves available to class counsel at all times. The time and effort contributed by the named plaintiffs support the requested service awards.

---

[2] National Association of Consumer Advocates, Standards and Guidelines for Litigating and Settling Consumer Class Actions., 29 (2014) available at
http://www.consumeradvocates.org/sites/default/files/NACA%20Class%20Action%20Guidelines%20Updated%20May%202014.pdf

### Significant Risks

The contribution of the named plaintiffs is not just limited to the work performed on the case: by participating in the action each of the named plaintiffs sacrificed their anonymity, exposing their financial information and the fact that they had been sued for owning a debt to the public - something that has a significant stigma associated with it.  *See In re Am. Investors Life Ins. Co. Annuity Mktg. & Sales Practices Litig.*, 263 F.R.D. 226, 245 (E.D. Pa 2009). Indeed, a quick google search of most of the named plaintiffs reveals this action, the related decisions, and through those documents, information concerning the lawsuits against named plaintiffs.

In addition to exposing their personal information, all of the named plaintiffs, put themselves on the line financially by rejecting the offers of judgment. In doing so the named plaintiff put themselves at serious financial risk, making themselves liable for fees and costs if the judgment did not exceed the award.  Fed. R. Civ. Pro 68(d). This was all done so that the class members could have a greater recovery.

The difference in the incentive award between the Named Plaintiffs is to acknowledge the additional work and contributions in preparing and sitting for depositions on behalf of the class. An incentive award for each Named Plaintiff is appropriate, as they each have stood by the class through the 5 years this case has been pending. Each plaintiff turned down substantial offers that would have benefited them personally, but left the class with nothing. Named Plaintiffs' loyalty and service to the interests of the class before their own should be recognized and rewarded.

### Ultimate Recovery

As discussed above there, is some difficulty in measuring the relief provided by this action in financial terms because the settlement's injunctive relief is so valuable. In addition to

the money being distributed to class members, each class member that experienced a substantive harm is getting that harm reversed, something exceedingly rare in litigation. And for the credit reporting class, the relief of getting their tradeline deleted is many magnitudes greater than the harm of having the amount of the debt incorrectly reported.

Further, in terms of proportion, the service awards are on the low end of range awarded by courts. Here, the total awards equal $8,000, approximately 5.7% of the $139,515 distributed to the class. *See Dornberger v. Metro Life Ins. Co.,* 203 F.R.D. 118, 125 (S.D.N.Y. 2001)(approving an award, in part, because it was small in relation to the settlement) *Frank v. Eastman Kodak Co*., 288 F.R.D. 174, 187 (W.D.N.Y 2005)(approving an award of 8.4 % of the settlement); *Reyes v. Altamarea Grp.*, No. 10 civ. 6451 2011 WL 4599822, at*9 (S.D.N.Y. Aug. 16, 2011). The awards are also appropriate in absolute terms. *See Gross v. Washington Mutual Bank, F.A*. No. 02 CV 4135 2006 WL 318814 (Feb. 9, 2006 E.D.N.Y)(Approving an incentive award for an FDCPA class action in the amount of $5,000); Named Plaintiffs' loyalty and service to the interests of the class before their own should be recognized and rewarded. Accordingly, Class Counsel respectfully request that the Court approve these incentive awards.

## V.    Conclusion

The Settlement is fair and reasonable and no Settlement Class Member has objected. It meets all of the requirements for final approval. The attorneys' fees and costs requested, and the incentive payments to the Named Plaintiffs, are reasonable and should also be approved. For all of the foregoing reasons, Plaintiffs respectfully request that this Court approve the Settlement and certify the Settlement Class. Plaintiffs further request that the Court approve the requested fee and incentive payments, in accordance with the Settlement Agreement. Plaintiffs request the Court to sign the proposed Final Order and Judgment attached as Exh A to Keshavarz Decl.

Dated:  September 5, 2016
         Brooklyn, New York

Respectfully submitted,
                    /s/
Ahmad Keshavarz
THE LAW OFFICES OF AHMAD KESHAVARZ
16 Court St., 26th Floor
Brooklyn, NY 11241-1026
Phone: (718) 522-7900
Fax:     (877) 496-7809 (toll-free)
Email: ahmad@NewYorkConsumerAttorney.com

NATIONAL CONSUMER LAW CENTER, INC.
Charles M. Delbaum, Esq. (admitted pro hac vice)
7 Winthrop Square, 4th floor
Boston, MA 02110
617-542-8010
617-542-8028 Fax
cdelbaum@nclc.org

CAMBA LEGAL SERVICES, INC.
Matthew Schedler, Of Counsel (MS-3774)
Kathleen A. Masters, Executive Director
885 Flatbush Ave.  2nd Fl.
Brooklyn, NY  11226
Phone: (718) 940-6311
MatthewSc@camba.org

## CERTIFICATE OF SERVICE

I hereby certify that on this day I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Defendants Mel S. Harris and Associates, LLC and
David Waldman by and through their attorneys of record
Brett A. Scher, Esq.
Yale Pollack, Esq.
Kaufman Dolowich Voluck & Gonzo LLP
135 Crossways Park Drive, Suite 201
Woodbury, NY 11797
Phone: (718) 940-6311

Defendants Resurgent Capital Services, LP;
LVNV Funding, LLC and
Alegis Group, LLC by and through their attorneys of record

23

Adam Swanson, Esq.
Kenneth Bressler, Esq.
BLANK ROME LLP
405 Lexington Avenue
New York, NY 10174
Phone: (212) 885-5000

Date: September 5, 2016
       Brooklyn, NY
/s/
Ahmad Keshavarz
Plaintiff's Attorneys